UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

SPEEDFIT LLC and AUREL A. ASTILEAN,

                      Plaintiffs,

     - against -

CHAPCO INC., ROBERT WEINSTEIN,
BRIAN WEINSTEIN and SAMSARA
FITNESS LLC,

                   Defendants.
-------------------------------------------------------------x

2015-cv-01323(LDW)(SIL)

**FIRST AMENDED
COMPLAINT**

(JURY TRIAL DEMANDED)

Plaintiffs Speedfit LLC ("Speedfit") and Aurel A. Astilean ("Astilean" collectively, the "Plaintiffs"), by and through their attorneys Fishman & Decea, as and for their first amended complaint allege as follows:

<u>NATURE OF THE CASE</u>

1.     This action arises out of breach of contract and patent infringement by defendants, who have converted Plaintiffs' proprietary and inventive treadmill design and know-how and claimed the inventive treadmill as their own notwithstanding the fact that the inventive treadmill, which took years to develop, was duly patented by Plaintiffs in April 2014. Defendants also infringe Plaintiffs' U.S. Patent by making, using and selling the invention in the U.S. since April 2014. The conduct of defendants has caused, and continues to cause, substantial injury and damage to Plaintiffs while defendants reap the benefit from the construction, distribution and sales of the ill-gotten treadmill. Upon information and belief, defendants' acts were willful, deliberate and calculated to inflict substantial damage to Plaintiffs, while providing financial benefit to themselves. This action seeks relief and redress as a result of defendants' wrongful conduct.

THE PARTIES

2.      Plaintiff Speedfit LLC is a New York limited liability company formed and existing pursuant to the laws of the State of New York with its principal place of business at 79 Newtown Lane, East Hampton, New York 11937. Speedfit is in the business of fitness, including developing programs and machines, to facilitate achieving an individual's fitness goals.

3.      Plaintiff Aurel A. Astilean, a member of Speedfit, is an individual residing in East Hampton, New York. Astilean is a former world class athlete, who founded Speedfit using his patented fitness system that emphasizes speed training rather than long distance exercise. For over ten years Astilean and Speedfit have developed motor-less leg-powered curved treadmills for eventual sale to the public.

4.      Defendant Chapco Inc. ("Chapco") is an active domestic business corporation located at 10 Denlar Drive, Chester, Connecticut 06412, incorporated on July 14, 1976, and is a metal fabrication, assembly and product development enterprise. Chapco sells a line of motor-less, leg-powered curved treadmills which are the subject of this action. Chapco converted the design for its motor-less leg-powered treadmill from Plaintiffs and markets them (through its subsidiary, Samara Fitness LLC) as the Samsara Fitness TrueForm Runner.

5.      Robert Weinstein is sued herein individually and in his official capacity as Chapco's Vice President and Director, upon information and belief, conspired with Chapco to commit the wrongs complained of herein.  Robert Weinstein resides at 515 Lake Drive Delray, Beach, Florida 33444.

6.      Brian Weinstein is sued herein individually and in his official capacity as Chapco's President, upon information and belief, conspired with Chapco, to commit the wrongs complained of herein. Brian Weinstein resides at 16 Deer Lane, Ivorytown, Connecticut 06442.

7.      Defendant Samsara Fitness LLC ("Samsara Fitness") is an active domestic limited liability company located at 10 Denlar Drive, Chester, Connecticut 06412, registered on May 28, 2013, formed by Chapco to market and sell non-motorized cardio exercise equipment, including the Samsara Fitness TrueForm Runner. (Samsara Fitness, Chapco, Robert Weinstein and Brian Weinstein shall hereinafter be referred to as "Defendants")

U.S. PATENT NO.  8,690/738

8.      Speedfit owns all right, title, and interest in and to United States Patent No. 8,690,738 (the "'738 Patent" or "Patent-in-Suit"), including the right to sue for past damages. Accordingly, Speedfit has standing to bring this patent infringement action.

9.      The '738 Patent was duly and legally issued by the United States Patent and Trademark Office on April 8, 2014, is active and is entitled "Leg Powered Treadmill." A copy of the '738 Patent is annexed hereto as Exhibit A.

10.      The '738 Patent claims a motor-less leg-powered curved (concave) treadmill with a closed loop treadmill belt – wherein the front and rear pulley end rollers support said closed loop treadmill belt – which comprises a plurality of parallel transverse slats, oriented perpendicular to an axis of rotation of said belt, and attached to each other in a resilient fashion. Each transverse slat includes a plurality of fins descending downward from each transverse slat, and formed with a material having sufficient resiliency, strength and weight to lie on and conform to the respective concave rows of upper support peripheral ball bearings (hereinafter, ("Closed Loop Treadmill Belt with Transverse Slats Including a Plurality of Fins").

JURISDICTION AND VENUE

11.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a) and § 1498(a). This complaint seeks the recovery of Plaintiffs' reasonable and entire

compensation for the use by Defendants, without license, of the Patent-in-Suit and invention described in and covered by the Patent-in-Suit, and the proprietary know-how provided to Defendants according to the written agreements. There is diversity jurisdiction in this matter pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000 and Plaintiffs do not share a state of citizenship with Defendant.  Additionally, this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and the Local Rules for the Southern and Eastern Districts of New York in that this is the district in which a substantial amount of the events complained of herein occurred.

<u>FACTS COMMON TO ALL CLAIMS</u>

13.     Plaintiffs introduced its invention of a motor-less leg-powered treadmill containing a Closed Loop Treadmill Belt with Transverse Slats Including a Plurality of Fins to Defendants and, among other things, provided its specifications and a prototype, in furtherance of an agreement between the parties, that Chapco would build five (5) production ready models of this treadmill (hereinafter referred to as the "Speedboard").  The Speedboard was to be manufactured with functionally reliant on a concave, motor-less, leg-powered, Closed Loop Treadmill Belt with Transverse Slats Including a Plurality of Fins, and the purpose of which was to manufacture the Speedboard for sale to an intended market at Defendants' sole investment and expense.

14.     This motor-less, leg powered, curved treadmill containing a Closed Loop Treadmill Belt with Transverse Slats Including a Plurality of Fins allows the rider to walk, jog, run or sprint without making any adjustments to the treadmill other than shifting the user's center of gravity forward or backwards.

15. On July 14, 2009, Plaintiff and Defendants entered into a non-circumvention, non-disclosure and confidentiality agreement. A copy of the non-circumvention, non-disclosure and confidentiality agreement ("Non-Disclosure Agreement") is annexed hereto as Exhibit B.

16. Defendant Robert Weinstein signed the Non-Disclosure Agreement, and upon information and belief, induced Astilean to enter into said agreement with his guarantee that the proprietary information and know-how would be fully confidential, and the opportunity of this agreement would lead to a most profitable business venture.

17. Upon information and belief, Brian Weinstein personally assured Plaintiffs that any and all information, including know-how, identified in the Non-Disclosure Agreement that was to be exchanged would be maintained in confidence.

18. The Non-Disclosure Agreement was breached in that Defendants knowingly sought out contacts disclosed in confidence and utilized said contacts in furtherance of their own business purposes.

19. Upon information and belief, Chapco utilized said contacts prior to July 14, 2012.

20. On November 20, 2009, Plaintiffs and Defendants executed an exclusive manufacturing agreement ("Manufacturing Agreement") memorializing the respective rights and duties of each party. A copy of the Manufacturing Agreement is annexed as Exhibit C.

21. As part of the Manufacturing Agreement, Plaintiffs and Defendants agreed to form a stand-alone LLC for the business venture of which Speedfit, LLC was to be the sole founding member holding an initial one hundred (100%) percent membership interest.

22. Robert Weinstein signed the Manufacturing Agreement, and upon information and belief, induced Astilean to enter into the Manufacturing Agreement with the promise of a

profitable venture and strong financial success. Upon information and belief, Brian Weinstein personally assured Plaintiffs of same.

23.     The term of the Manufacturing Agreement was for three (3) years from the date that Chapco delivered to Speedfit five (5) production-ready models of the Speedboard.

24.     In return, the Manufacturing Agreement granted Chapco the exclusive international manufacturing rights of the Speedboard for a period of three (3) years from the date of delivery of the five (5) production ready models.

25.     Chapco was to manufacture the Speedboard to the agreed-to specifications authorized by Speedfit, according to the Speedfit proprietary know-how and now patented Closed Loop Treadmill Belt with Transverse Slats Including a Plurality of Fins.   The specifications were to include materials, artwork, designs, colors, marks and functionality.

26.     The Manufacturing Agreement dictates that any alterations or improvements to the Speedboard, patentable or not, made by Chapco, shall be owned exclusively by Speedfit.

27.     Thereafter, Chapco was to manufacture the Speedboard according to the terms of the Manufacturing Agreement.

28.     The Manufacturing Agreement called for Speedfit to hold all global intellectual property rights ("IP Rights") without respect to time, geography or any other limitation, to every aspect of the invention, creation, design, construction and manufacture of the Speedboard and each of its components.  Chapco was deemed a licensee of the IP Rights held by Speedfit in the Speedboard, including the proprietary know-how, any patent rights or good will. The licensee status was to last the duration of the Manufacturing Agreement.

29.     Chapco produced a first production ready model of the Speedboard in or about March 2012, and duly delivered this treadmill to Plaintiffs in accordance with the Manufacturing Agreement.

30.     Thereafter, Chapco produced a second production ready model of the Speedboard in or about June 2012, duly delivering the treadmill in accordance with the terms of the Manufacturing Agreement.

31.     Upon information and belief, Chapco produced a third and fourth prototype Speedboard sometime after June 2012, but these two treadmills were inferior prototypes and not production ready. The fifth treadmill was delivered to a customer in Germany but it, too, was an inferior prototype and not production ready.

32.     Chapco took the prototype Astilean had delivered to them and because of disagreements between the parties concerning the manufacturing process, stole the design and began to manufacture the curved, leg powered treadmill containing a Closed Loop Treadmill Belt with Transverse Slats Including a Plurality of Fins, under its own brand name, the Samsara Fitness TrueForm Runner.  This is evidenced by Chapco's web site which has an exact copy of the Speedboard listed for sale as the Samsara Fitness TrueForm Runner (http://www.chapcoinc.com/).

33.     Utilizing the purloined design of the Speedboard, Chapco has built and sold an unknown quantity of its Samsara Fitness TrueForm Runner treadmills and has retained all of the revenue generated from the sales.

34.     Speedfit did not consent to the sales nor to the fact that the proceeds from the sale were kept solely by Chapco.

35.     Pursuant to the Manufacturing Agreement, Chapco was barred from making or selling any alterations or improvements to the Speedboard, patentable or not, made by Chapco as such alterations or improvements are (and were to be) exclusively owned by Speedfit.

36.     The Samsara Fitness TrueForm Runner embodies the patented invention of Plaintiffs, and Defendants have both infringed on the '738 Patent, and breached the Manufacturing Agreement, by manufacturing and selling Plaintiffs' treadmill (the Speedboard) under Chapco's own brand name. In point of fact, Defendants had no products even remotely similar to the Speedboard prior to the execution of the Manufacturing Agreement, and Samsara Fitness was only incorporated on May 28, 2013, a few months after Plaintiffs provided Defendants with the prototype.

37.     On October 1, 2013, Plaintiffs sent Defendants a cease & desist letter regarding Chapco's breach of the Manufacturing Agreement ("Cease & Desist Letter").

38.     Nevertheless, Chapco failed to heed the Cease & Desist Letter, has continued to manufacture and sell the Speedboard under the Samsara Fitness TrueForm Runner to the exclusion of Speedfit, and has failed to tender any remuneration to Plaintiffs from the sales of the Samsara Fitness TrueForm Runner.  As of April 8, 2014, such manufacture and/or sales are an intentional infringement of the '738 Patent.

39.     Defendants' actions have harmed Plaintiffs as Defendants have introduced an identical product into the marketplace and, indeed, have imperiled current and future sales of the Speedboard by Speedfit.

40.     In or about February 2015, Astilean contacted Gym Source, Inc. ("Gym Source") to sell the Speedfit Speedboard, but was not able to secure a contract to produce, market and sell it.

41.     Representatives of Gym Source explained that because there are two other manufacturers of the curved leg-powered or motor-less treadmills already on the market – namely the Samsara Fitness TrueForm Runner and one manufactured by Woodway USA, Inc. against whom Plaintiffs have a pending lawsuit in the Eastern District of New York for, among other things, patent infringement.

42.     Recently, Plaintiff Astilean reached out to BRECOFlex Co., LLC ("BRECOFlex") in order to have them manufacture the belt that Speedfit could ultimately use to demonstrate the treadmill to other potential manufacturers.  One particular vendor in Korea who was interested in manufacturing the Speedboard specifically requested that Plaintiffs provide a fully manufactured belt in order to proceed with, and finalize, any agreement.

43.     Upon information and belief, and in direct contravention to the Non-Disclosure Agreement, BRECOFlex and Chapco had discussed the possibility of, and ultimately had reached an agreement whereby Chapco would be building the frame for the Samsara Fitness TrueForm Runner while BRECOFlex was subcontracted to manufacture the belt for the Samsara Fitness TrueForm Runner. Upon information and belief, said agreement was either discussed, and/or entered into prior to July 13, 2012.

44.     As a result, BRECOFlex informed Plaintiff that it could not provide a belt to Speedfit as this would interfere with their contract with Chapco (and upon information and belief, Samara Fitness) and BRECOFlex's ability to sell, market and manufacture the Samsara Fitness TrueForm Runner.

45.     Upon information and belief, BRECOFlex's vendor identity was disclosed to Defendants by Plaintiffs, pursuant to the protection of the Non-Disclosure Agreement.

46.     Despite Plaintiffs' attempts to procure vendors to sell the Speedboard, it has been stymied because Chapco (and Samara Fitness) has stolen Plaintiffs' design specifications and have inundated the market with its Samsara Fitness TrueForm Runner.

47.     Defendants have caused substantial injury and damage to Plaintiffs; Defendants are reaping the benefits from the sale of its product and Plaintiffs are being forced to pay higher costs to manufacture the Speedboard because Defendants are occupying space in this niche market.

FIRST CLAIM FOR RELIEF
(INFRINGEMENT OF THE PATENT-IN-SUIT)

48.     Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

49.     Plaintiffs are the owner of the Patent-in-Suit. (Exhibit A).

50.     Plaintiffs owned the Patent-in-Suit throughout the period of the Defendants' infringement and still own the Patent-in-Suit.

51.     Claim 1 of the '738 Patent sets forth:

1. A motor-less, leg-powered curved treadmill comprising:

a treadmill frame having peripheral left and right sides;

a concave row of upper support peripheral ball bearings located at each of the peripheral left and right sides of the treadmill frame; and

a set of respective front and rear pulley end rollers for rotation;

a closed loop treadmill belt, wherein said front and rear pulley end rollers support said closed loop treadmill belt;

wherein said closed loop treadmill belt comprises a plurality of parallel transverse slats oriented perpendicular to an axis of rotation of said belt and attached to each other in a resilient fashion; and

10

wherein each said transverse slat includes a plurality of fins
connected to and extending outward from each said transverse slat
and formed with a material with sufficient resiliency, strength and
weight to lie on and conform to the respective concave rows of the
upper support peripheral ball bearings.

52.     Defendants had actual or constructive knowledge of Plaintiffs' Patent-in-Suit
and/or Plaintiffs' patented subject matter and know-how.

53.     Defendants have infringed the '738 Patent literally and/or under the doctrine of
equivalents, and are still infringing on the '738 Patent by making, selling, marketing and using
the Samsara Fitness TrueForm Runner that embodies the patented invention of Plaintiffs.

54.     Upon information and belief, Defendants will continue in its willful and deliberate
infringement of the Patent-in-Suit unless and until it is enjoined by this Court.

55.     Plaintiffs have been, and continue to be, damaged by the infringement by
Defendants in an amount at present unknown, as Astilean and Speedfit have not been informed
as to the full extent of such infringement and such extent cannot be ascertained except by
discovery and special accounting.

56.     Plaintiffs are entitled to compensation for use by Defendants of the Patent-in-Suit.

57.     Plaintiffs have no adequate remedy at law.

58.     By reason of the foregoing, Plaintiffs request judgment in their favor against
Defendants for a sum of money representing the reasonable and entire compensation for the
infringing use by or for Defendants of the Patent-in-Suit either literally or under the doctrine of
equivalents, with interest, and for such other relief as this court may deem just and proper,
including interest, attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
(BREACH OF CONTRACT)

59.     Plaintiffs repeat and reallege all allegations contained in the foregoing paragraphs of this complaint as if they were fully stated herein.

60.     Plaintiff and Defendants entered into the valid Non-Disclosure Agreement on July 14, 2009, and the valid Manufacturing Agreement on November 20, 2009, in which Chapco agreed to assist Plaintiffs in the development and manufacture of a prototype of Plaintiffs' leg powered treadmill, containing a Closed Loop Treadmill Belt with Transverse Slats Including a Plurality of Fins, confidentially.

61.     Defendants breached the Non-Disclosure Agreement by knowingly seeking out contacts disclosed in confidence and utilized said contacts in furtherance of their own business purposes.

62.     Defendants breached the Manufacturing Agreement by failing to deliver the five production ready models.

63.     Plaintiffs have further breached the Manufacturing Agreement by taking the design for the Speedboard, manufacturing and selling – to the exclusion of Speedfit – an identical concave, leg-powered treadmill containing a Closed Loop Treadmill Belt with Transverse Slats Including a Plurality of Fins bearing the Samsara Fitness TrueForm Runner brand name, in violation of the IP Rights granted to Speedfit in the Manufacturing Agreement.

64.     Plaintiffs have been damaged by: Defendants' failure to deliver the promised five production ready models, Defendants utilizing business contacts learned in confidence, and, in furtherance of their own business purposes, taking the design for the Speedboard and manufacturing an identical concave, leg-powered treadmill containing a Closed Loop Treadmill

Belt with Transverse Slats Including a Plurality of Fins bearing the Samsara Fitness TrueForm Runner brand name, and selling to the exclusion of Speedfit.

65.     Defendants acted in bad faith as they willfully disregarded the Cease & Desist Letter as well as the duly executed Non-Disclosure and Manufacturing Agreement, and instead utilized Speedfit's business contacts Defendants learned in confidence, and stole the Speedboard design to manufacture an identical concave, motor-less, leg-powered treadmill containing a Closed Loop Treadmill Belt with Transverse Slats Including a Plurality of Fins bearing the Samsara Fitness TrueForm Runner brand name, and selling to the exclusion of Speedfit.

66.     Defendants' bad faith and dishonest failure to adhere to two duly executed agreements, and notice of the duly issued Patent-in-Suit constitutes a willful disregard of Plaintiffs' intellectual property rights, including as agreed-to in the Manufacturing Agreement, of the motor-less, leg-powered, curved treadmill containing a Closed Loop Treadmill Belt with Transverse Slats Including a Plurality of Fins, an invention that took over ten (10) years to fully realize.

67.     Defendants' manufacturing and selling of the Samara TrueForm Runner, aside from causing substantial injury to Plaintiffs, has inundated the market with a knock-off design, and Plaintiffs cannot even procure a new vendor to sell – or even manufacture – the Speedboard to correct the public's perception of this Chapco's subpar production of a concave, motor-less treadmill containing a Closed Loop Treadmill Belt with Transverse Slats Including a Plurality of Fins.

68.     Plaintiffs are being forced to pay higher costs for the manufacture of its treadmill as a result of Chapco's position in the market.

69.     By reason of the foregoing, Defendants are indebted to Plaintiffs for all amounts gained from the sale of the Samsara Fitness TrueForm Runner, including but not limited to sales in the United States and abroad, presently believed to be in excess of ten million dollars ($10,000,000), together with interest, punitive damages, legal costs and attorneys' fees incurred by Plaintiffs.

<u>THIRD CLAIM FOR RELIEF</u>
(BREACH OF FIDUCIARY DUTY)

70.     Plaintiffs repeat and reallege all allegations contained in the foregoing paragraphs of this complaint as if they were fully stated herein.

71.     Pursuant to, and beyond the terms of, the Manufacturing Agreement and the Non-Disclosure Agreement, Defendants owed fiduciary duties to Plaintiffs.

72.     Pursuant to the Manufacturing Agreement, Defendants agreed to assist Plaintiffs, confidentially, in the development and manufacture of production ready models of Plaintiffs' motor-less, leg powered curved treadmill containing a Closed Loop Treadmill Belt with Transverse Slats Including a Plurality of Fins, an invention which Astilean and Speedfit had been developing for over ten years.

73.      Defendants' promise and mutual agreement to form a stand-alone LLC for the business venture of which Speedfit, LLC was to be the sole founding member holding an initial one hundred (100%) percent membership interest demanded a relationship of trust and confidence whereby Defendants were bound to exercise the utmost good faith and undivided loyalty toward Plaintiffs throughout the course of the relationship.

74.     As Plaintiffs disclosed a motor-less, leg-powered curved treadmill containing a Closed Loop Treadmill Belt with Transverse Slats Including a Plurality of Fins and entrusted Defendants to honor Plaintiffs' intellectual property rights, as well as the terms of both the

Manufacturing Agreement and Non-Disclosure Agreement, a higher level of trust was expected from Defendants.

75.     Defendants breached their fiduciary duties to Plaintiffs by taking the design for the Speedboard and manufacturing an identical concave, leg-powered treadmill containing a Closed Loop Treadmill Belt with Transverse Slats Including a Plurality of Fins bearing the Samsara Fitness brand name and sold as the Samsara Fitness TrueForm Runner, in direct contravention to the terms of the Manufacturing Agreement and Non-Disclosure Agreement.

76.     Upon information and belief, Messrs. Brian and Robert Weinstein personally assured Plaintiffs of the financial success and future profits to come from said venture, which demanded a relationship of trust and confidence whereby Messrs. Brian and Robert Weinstein were personally bound to exercise the utmost good faith and undivided loyalty toward Plaintiffs throughout the course of the business venture.

77.     Defendants' actions have harmed Plaintiffs by virtue of the fact that Plaintiffs have not received any monetary compensation for the sale of the Samsara Fitness TrueForm Runner.

78.     Defendants' actions have also harmed Plaintiffs as Defendants have introduced a potentially inferior product into the marketplace thus imperiling future sales of the Speedboard.

79.     By reason of the foregoing, Defendants are indebted to Plaintiffs for an amount to be determined at trial, presently believed to be in excess of ten million dollars ($10,000,000), together with interest, punitive damages, legal costs and attorneys' fees incurred by Plaintiffs.

<u>FOURTH CLAIM FOR RELIEF</u>
(CONVERSION)

80.     Plaintiffs repeat and reallege all allegations contained in the foregoing paragraphs of this complaint as if they were fully stated herein.

81.    Plaintiffs are the owners of the Patent-in-Suit. (Exhibit A), and owned the Patent-in-Suit throughout the period of the Defendants' infringement, and conversion, and indeed still own the Patent-in-Suit.

82.    Plaintiffs provided the specifications for the Speedboard to Defendants (pursuant to the Manufacturing Agreement) so that Defendants could commence the manufacture of the five production ready models and eventual sales to the public or a chosen market pursuant to the Manufacturing Agreement.

83.    Instead, Defendants failed to deliver the five production ready models, coopted the design specifications of the Speedboard, and have instead begun manufacturing an identical concave, motor-less, leg powered treadmill containing a Closed Loop Treadmill Belt with Transverse Slats Including a Plurality of Fins under the Samsara Fitness brand name, sold as the Samsara Fitness TrueForm Runner.

84.    Defendants exercised an unauthorized dominion over the intellectual property of Plaintiffs that are protected by the Patent-in-Suit, to the exclusion and derogation of Plaintiffs' rights. In point of fact, Defendants had no products even remotely similar to the Speedboard prior to Plaintiffs' disclosure of the details and design of the Speedboard, and neither was Samsara Fitness incorporated until May 2013, well after Plaintiffs provided Defendants with the schematics and prototype of the Speedboard.

85.    Defendants have further converted all the proceeds from the sales of the Samsara Fitness TrueForm Runner which is based on Plaintiffs' design and retained the sale proceeds for themselves.

86.    By possessing proceeds of the Samsara Fitness TrueForm Runner – which is based upon, and infringes upon, Plaintiffs' design – and failing to share in the revenue earned by

its sale with Plaintiffs, Defendants have exercised an unauthorized dominion over the sale proceeds, to the exclusion and derogation of Plaintiffs' rights.

87.     By reason of the foregoing, Defendants are indebted to Plaintiffs in an amount to be determined at trial, presently believed to be in excess of ten million dollars ($10,000,000), together with interest thereon, punitive damages, legal costs and attorneys' fees incurred by Plaintiffs.

FIFTH CLAIM FOR RELIEF<br>(UNJUST ENRICHMENT)

88.     Plaintiffs repeat and reallege all allegations contained in the foregoing paragraphs of this complaint as if they were fully stated herein.

89.     Defendants have utilized Plaintiffs treadmill design for their own benefit by manufacturing and selling the Samsara Fitness TrueForm Runner treadmill under its Samsara Fitness brand name.

90.     Defendants have reaped the proceeds of selling the Samsara Fitness TrueForm Runner treadmill and failing to compensate Plaintiffs.

91.     Equity and good conscience dictate that Plaintiffs must be compensated for all the sales of the Samsara Fitness TrueForm Runner.

92.     Plaintiffs have no adequate remedy at law.

93.     Defendants have been unjustly enriched through the receipt of proceeds of the sale of the Samsara Fitness TrueForm Runner in an amount to be determined at trial but presently believed to be in excess of ten million dollars ($10,000,000), together with interest thereon, punitive damages, legal costs and attorneys' fees incurred by Plaintiffs.

## SIXTH CLAIM FOR RELIEF
### (CONSTRUCTIVE TRUST)

94.     Plaintiffs repeat and reallege all allegations contained in the foregoing paragraphs of this complaint as if they were fully stated herein.

95.     Plaintiffs and Defendants entered into a confidential, fiduciary relationship which gave rise to a relationship of trust and confidence whereby each was bound to exercise the utmost good faith and undivided loyalty towards the other.

96.     Express promises were made by Defendants regarding the intellectual property rights pertaining to the Speedboard.

97.     Proprietary designs and intellectual property were provided by Plaintiffs to the Defendants for the sole purpose of the eventual large scale manufacture of the Speedboard for sale to the public or intended buyers.

98.     Instead Defendants utilized the proprietary design information transferred by Plaintiffs and manufactured their own version of the Speedboard marketed as the Samsara Fitness TrueForm Runner.

99.     Defendants' breach of fiduciary duty was conscious and done with the intent to deceive, manipulate and/or defraud the Plaintiffs and amounted to a defalcation.

100.     Plaintiffs have no adequate remedy at law.

101.     Defendants have been unjustly enriched by their actions and Plaintiffs should be awarded a constructive trust over the assets of Chapco.

WHEREFORE, Plaintiffs, Speedfit LLC and Aurel A. Astilean, demand judgment against Defendants, Chapco, Samsara Fitness, Robert Weinstein and Brian Weinstein, jointly and severally, as follows:

i.    On the first claim:

    a.   awarding to Plaintiffs an accounting to determine the amounts of their damages;

    b.   awarding to Plaintiffs money damages in an amount sufficient to compensate them for Defendants' infringement of the Patent-in-Suit, but not less than a reasonable royalty;

    c.   awarding to Plaintiffs prejudgment interest under 35 USC § 284;

    d.   awarding to Plaintiffs increased damages, pursuant to 35 USC § 284, in an amount not less than three times the actual amount of damages awarded to Defendants, by reason of Defendants' willful and deliberate infringement of the Patent-in-Suit;

    e.   restraining and enjoining Chapco and Chapco's officers, directors, agents, servants, employees, successors, assigns, parents, subsidiaries, affiliated or related companies, and attorneys from directly or indirectly infringing on the Patent-in-Suit;

    f.   restraining and enjoining Samsara Fitness and Samsara Fitness' officers, directors, agents, servants, employees, successors, assigns, parents, subsidiaries, affiliated or related companies, and attorneys from directly or indirectly infringing on the Patent-in-Suit;

    g.   declaring the case exceptional under 35 USC § 285 and awarding to Plaintiffs reasonable attorneys' fees, expenses and costs incurred in this action;

ii.      On the Second Claim for Breach of Contract, awarding to Plaintiffs money damages against Defendants in an amount to be determined upon the trial of this action but presently believed to be in excess of ten Million Dollars ($10,000,000), together with interest thereon, punitive damages, and legal costs and attorneys' fees incurred by Plaintiffs;

iii.     On the Third Claim for Breach of Fiduciary Duty, awarding to Plaintiffs money damages against Defendants in an amount to be determined upon the trial of this action but presently believed to be in excess of ten Million Dollars ($10,000,000), together with interest thereon, punitive damages, and legal costs and attorneys' fees incurred by Plaintiffs;

iv.     On the Fourth Claim for Conversion, awarding to Plaintiffs money damages against Defendants in an amount to be determined upon the trial of this action but presently believed to be in excess of ten Million Dollars ($10,000,000), together with interest thereon, punitive damages, and legal costs and attorneys' fees incurred by Plaintiffs;

v.      On the Fifth Claim for Unjust Enrichment, awarding to Plaintiffs money damages against Defendants in an amount to be determined upon the trial of this action but presently believed to be in excess of ten Million Dollars ($10,000,000), together with interest thereon, punitive damages, and legal costs and attorneys' fees incurred by Plaintiffs;

vi.     On the Sixth Claim for Constructive Relief, awarding to Plaintiffs a constructive trust against the assets of Chapco and Samsara Fitness together with punitive damages, legal costs and attorneys' fees incurred by Plaintiffs;

vii.        Granting to Plaintiffs such other and further relief as this Court may seem just and

proper, including an award of punitive damages against all Defendants.

Dated: Armonk, New York
        August 11, 2015

                            FISHMAN & DECEA

                    By:    */s/ Thomas B. Decea*
                            THOMAS B. DECEA
                            Member of the Firm
                            84 Business Park Drive, Suite 200
                            Armonk, New York 10504
                            (914) 285-1400