UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SPEEDFIT LLC and AUREL A. ASTILEAN,

                      Plaintiffs,

     -against-

CHAPCO INC., ROBERT WEINSTEIN,
BRIAN WEINSTEIN, and SAMSARA
FITNESS LLC,

                     Defendants.
-------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
15-CV-1323 (JMA)(SIL)

**LOCKE, Magistrate Judge:**

Presently before the Court, on referral from the Honorable Joan M. Azrack for

Report and Recommendation, is Defendants Chapco Inc. ("Chapco"), Robert

Weinstein, Brian Weinstein, and Samsara Fitness LLC's ("Samsara," and,

collectively, "Defendants") motion to dismiss Plaintiffs Speedfit LLC ("Speedfit") and

Aurel A. Astilean's ("Astilean," and, collectively, "Plaintiffs") Amended Complaint for

lack of jurisdiction and failure to state a claim pursuant to rules 12(b)(1) and 12(b)(6)

of the Federal Rules of Civil Procedure. *See* Docket Entry ("DE") [26].  By way of a

Complaint dated March 13, 2015, Plaintiffs commenced this action seeking damages

for breach of contract, breach of fiduciary duty, conversion, unjust enrichment, and a

constructive trust. *See* DE [1].  Plaintiffs amended the Complaint on August 11, 2015,

adding a patent infringement claim.  *See* Amended Complaint ("Am. Compl."), DE

[21].  Defendants filed the instant motion to dismiss on October 26, 2015, which

Plaintiffs oppose.  *See* DE [26, 27].  On April 12, 2016, Judge Azrack referred

Defendants' motion to this Court for a Report and Recommendation.  For the reasons

set forth herein, the Court respectfully recommends that Defendants' motion to dismiss be granted in part and denied in part.

## I.   BACKGROUND

Unless otherwise noted, the following facts are taken from Plaintiffs' Amended Complaint and accompanying exhibits, and are accepted as true for purposes of the instant motion.

### A. Relevant Facts

This case is about motor-less leg powered treadmills.  Plaintiff Astilean is a former athlete and founder of Speedfit, a business that creates fitness programs and machines. Am. Compl. ¶¶ 2-3. Astilean and Speedfit spent over a decade developing a "motor-less leg-powered curved treadmill," called the Speedboard ("Speedboard"), and patented as United States Patent No. 8,690,738 (the "Patent"), which was issued on April 8, 2014.  *Id.* at ¶¶ 3, 9; Ex. A, DE [21-1] (U.S. Patent No. 8,690,738).  The Speedboard allows an individual to "walk, jog, run or sprint without making any adjustments to the treadmill other than shifting the user's center of gravity forward or backward." *Id.* at ¶ 14.  In 2009, Speedfit entered into a manufacturing agreement with Chapco, a "metal fabrication, assembly and product development enterprise." *Id.* at ¶¶ 4, 20.  Chapco's Director and Vice President is Robert Weinstein, and its President is Brian Weinstein.  *Id.* at ¶¶ 5-6.

On July 14, 2009, Chapco and Speedfit entered into a Non-Disclosure Agreement ("Non-Disclosure Agreement").  *Id.* at Ex. B (Non-Circumvention, Non-Disclosure and Confidentiality Agreement), DE [21-2].   According to the Non-

Disclosure Agreement, the parties "may learn from one another . . . the names and telephone numbers of investors, borrowers, lenders, agents, brokers, banks, lending corporations, individuals and/or trusts, or buyers and sellers hereinafter called Contacts." *Id.* at 1. Pursuant to the Non-Disclosure Agreement, the parties agreed to protect the confidentiality of, and refrain from entering into business with, such Contacts. *Id.* The agreement had a three year term, expiring on July 14, 2012. *Id.* The agreement was between Chapco and Speedfit, and was signed Robert Weinstein as President, and Astilean as CEO. *Id.* at 2. Plaintiffs allege "upon information and belief" that Robert Weinstein "induced" Astilean to enter into the agreement with a guarantee that proprietary information would be kept confidential and that the "opportunity of this agreement would lead to a most profitable business venture." *Id.* at ¶ 16. They also claim "[u]pon information and belief" that "Brian Weinstein personally assured Plaintiffs that any and all information, including know-how, identified in the Non-Disclosure Agreement that was to be exchanged would be maintained in confidence." *Id.* at ¶ 17.

Following execution of the Non-Disclosure Agreement, on November 20, 2009, Chapco and Speedfit entered into an exclusive manufacturing agreement ("Manufacturing Agreement"). *Id.* at Ex. C. (Exclusive Manufacturing Agreement), DE [21-3]. Pursuant to the terms of the Manufacturing Agreement, Speedfit agreed to "grant Chapco the exclusive international manufacturing rights to the SpeedBoard for a period of three (3) years from the date of delivery to SpeedFit of five (5) production-ready models of the SpeedBoard . . . ." *Id.* at ¶ II.A. It also provided that

3

Speedfit held the global intellectual property rights to every aspect of the Speedboard, and Chapco was a licensee of such rights for the duration of the Manufacturing Agreement. *Id.* at ¶ IV.A. Similar to the Non-Disclosure Agreement, it was signed by Chapco through its President Robert Weinstein, and Speedfit by Astilean as CEO. *Id.* at 7. Plaintiffs allege, "upon information and belief," that the Weinsteins "induced Astilean to enter into the Manufacturing Agreement with the promise of a profitable venture and strong financial success." Am. Compl. ¶ 22.

In March and June 2012, Chapco produced the first two production ready models of the Speedboard in accordance with the Manufacturing Agreement. *Id.* at ¶¶ 29-30. However, after June 2012, Chapco produced three inferior prototypes that were "not production ready." *Id.* at ¶ 31. Plaintiffs allege that the relationship between the parties subsequently broke down, and Chapco "stole the design [of the Speedboard] and began to manufacture the curved, leg powered treadmill . . . ." *Id.* at ¶ 32. Specifically, Plaintiffs claim that Chapco began manufacturing an identical product under its own brand name, the Samsara Fitness TrueForm Runner ("Samsara Product"). *Id.* The Samsara Product is sold through Samsara, a business formed by Chapco and incorporated on May 28, 2013. *Id.* at ¶¶ 7, 36.

Plaintiffs allege that Defendants breached the Manufacturing Agreement by failing to produce five ready-made models, and because production of the Samsara Product violated its intellectual property rights. *Id.* at ¶¶ 62, 63. Plaintiffs sent Defendants a cease and desist letter on October 1, 2013 regarding the Samsara Product, but Chapco continued to sell it. *Id.* at ¶¶ 37-38. No revenue from the sales

of the Samsara Product has been shared with Plaintiffs.  *Id.* at ¶¶ 34, 90.  Plaintiffs also contend that the Samsara Product has curtailed current and future sales of the Speedboard and "inundated the market."  *Id.* at ¶¶ 39, 46.  As an example, in February 2015, Plaintiffs attempted to sell the Speedboard to Gym Source, Inc.  *Id.* at ¶ 40.  Gym Source, Inc. declined Plaintiffs' offer because there are already two motor-less leg powered treadmills on the market—the Samsara Product and another model by Woodway USA, Inc., a company against whom Plaintiffs also have a pending lawsuit for patent infringement.  *Id.* at ¶ 41.

Plaintiffs also assert that Defendants breached the Non-Disclosure Agreement by "knowingly [seeking] out contacts disclosed in confidence and utiliz[ing] said contacts in furtherance of their own business purposes" during the term of the agreement.  *Id.* at ¶ 18.  Plaintiffs claim that, due to the theft of confidential contacts, they now must pay higher production costs to manufacture the Speedboard.  *Id.* at ¶ 47.  In support of this allegation, Plaintiffs refer to when they reached out to BRECOFlex Co., LLC ("BRECOFlex"), a manufacturer, to make belts for the Speedboard.  *Id.* at ¶ 42.  BRECOFlex declined the offer as it was already manufacturing belts for the Samsara Product, and production of a belt for Speedfit would "interfere with their contract with Chapco."  *Id.* at ¶¶ 43-44.  Plaintiffs further state that, "[u]pon information and belief," BRECOFlex's vendor identity was disclosed to Defendants by Plaintiffs and that BRECOFlex and Chapco entered into an agreement prior to July 13, 2012.  *Id.* at ¶¶ 43, 45.

### B. **Procedural Background**

Plaintiffs commenced this action on March 13, 2015 and amended their Complaint on August 11, 2015.  DE [1, 21].  In the Amended Complaint, Plaintiffs allege six causes of action against all Defendants for:  (i) patent infringement; (ii) breach of contract for both the Non-Disclosure Agreement and Manufacturing Agreement; (iii) breach of fiduciary duty; (iv) conversion; (v) unjust enrichment; and (vi) constructive trust.  *See* DE [21].  Plaintiffs seek compensatory damages, prejudgment interest, injunctive relief, punitive damages, and legal costs and attorneys' fees.  *Id.*  In response, Defendants move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), which Plaintiffs oppose.  *See* DE [26, 27].

## II.   LEGAL STANDARD

### A. **Fed. R. Civ. P. 12(b)(1)**

Pursuant to Article III, Section 2 of the United States Constitution, "the jurisdiction of the federal courts is limited to 'Cases' and 'Controversies,' which 'restricts the authority of the federal courts to resolving 'the legal rights of litigants in actual controversies.'" *Amityville Mobile Home Civic Ass'n v. Town of Babylon*, No. 14-CV-2369, 2015 WL 1412655, at *2 (E.D.N.Y. Mar. 26, 2015) (quoting *Genesis Healthcare Corp. v. Symczyk*, --- U.S. ---, 133 S. Ct. 1523, 1528 (2013)).  In the absence of a case or controversy, Fed. R. Civ. P. 12(b)(1) "provides that a party may move to dismiss a case for lack of subject matter jurisdiction." *Amityville Mobile Home*, 2015 WL 1412655, at *3; *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.

2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."). The Second Circuit has held that, "[t]he hallmark of a case or controversy is the presence of adverse interests between parties who have a substantial personal stake in the outcome of the litigation." *Evans v. Lynn*, 537 F.2d 571, 591 (2d Cir. 1975); *see also Ayazi v. N. Y. C. Bd. of Educ.*, No. 98-CV-7461, 2006 WL 1995134, at *2 (E.D.N.Y. July 14, 2006), *vacated on other grounds*, 315 F. App'x 313 (2d Cir. 2009) ("Without standing, this court does not have jurisdiction to hear the claim."). Therefore, to survive a defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), "a plaintiff must allege facts 'that affirmatively and plausibly suggest that it has standing to sue.'" *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 227 (E.D.N.Y. 2015) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).

In deciding a motion to dismiss for lack of subject matter jurisdiction, "a court must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." *U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 449 (S.D.N.Y. 2001). However, "[w]here subject matter jurisdiction is challenged, . . . a court may consider materials outside the pleadings, such as affidavits, documents and testimony." *Id.*; *see also All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89, n. 8 (2d Cir. 2006) ("The presentation of affidavits on a motion under Rule 12(b)(1) . . . does not convert the motion into a motion for summary judgment under Rule 56.").

### B. **Fed. R. Civ. P. 12(b)(6)**

In order to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1960 (2007)).  A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678, 129 S. Ct. at 1949.  In deciding a motion to dismiss, "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009)). In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court's consideration is limited to:

> (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated . . . by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.,* documents that are "integral" to the complaint.

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (internal citation omitted).

## III.  DISCUSSION

In the instant motion, Defendants argue that:  (i) Plaintiff Astilean lacks standing to sue for patent infringement; and (ii) each state law cause of action fails to state a claim for which relief can be granted.  Further, Defendants argue that

Plaintiffs' demand for punitive damages should be dismissed in any event as to their state law claims. Applying the standards outlined above, and for the reasons set forth herein, the Court recommends that Defendants' motion be granted in part and denied in part.

### A. Astilean's Standing to Sue for Patent Infringement

In the Amended Complaint, Plaintiffs plead that "Speedfit owns all right, title, and interest" in the Patent. Am. Compl. ¶ 8. Defendants argue that, due to this statement, Astilean has no proprietary rights in the Patent and thus does not have standing to sue for infringement. Memorandum of Law in Support of Defendants Chapco Inc.'s, Robert Weinstein's, Brian Weinstein's and Samsara Fitness LLC's Motion to Dismiss the First Amended Complaint ("Defs. Mem. Law"), DE [26-1], at 11. In opposition, Plaintiffs assert that Astilean originally owned the Patent and assigned it to Speedfit on June 1, 2015, and seeks to sue for infringement of the Patent prior to the date of assignment. Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint ("Pls. Mem. Law"), DE [27], at 7. To support its assertion that the Patent was assigned, Plaintiffs submit: (i) a written document titled "Assignment," dated June 1, 2015 ("Assignment"); (ii) a Notice of Recordation of the Assignment in the United States Patent and Trademark Office; and (iii) a Patent Assignment Cover Sheet. *See* Declaration of John F. Vodopia in Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("Vodopia Decl."), DE [28], at ¶¶ 3-5.

9

All suits, including those for patent infringement, "must satisfy constitutional and prudential standing requirements . . . ." *Princeton Dig. Image Corp. v. Hewlett-Packard*, 12 CIV. 6973, 2013 WL 1454945, at *3 (S.D.N.Y. Mar. 21, 2013). "The general rule is that one seeking to recover money damages for infringement of a United States patent (an action 'at law') must have held the *legal title* to the patent *during the time of the infringement*." *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1579 (Fed. Cir. 1991) (emphasis in original). Under the Patent Act, the patent owner has standing to sue for infringement. 35 U.S.C.A. § 281. Assignees of a patent also have standing to sue and may "sue alone in their own right." *My First Shades v. Baby Blanket Suncare*, 914 F. Supp. 2d 339, 344-45 (E.D.N.Y. 2012); *see Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1249-50 (Fed. Cir. 2000) ("A party may bring an action for patent infringement only if it is the "patentee," *i.e.,* if it owns the patent, either by issuance or by assignment."). To determine whether an assignee has standing to sue for patent infringement, "[c]ourts look to the substance of an agreement to determine whether it has the effect of an assignment . . . ." *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1030 (Fed. Cir. 1995).

Applying the standard above, the Court finds that Astilean owned the Patent prior to the assignment and thus has standing to sue for patent infringement. Although Plaintiffs plead that Speedfit is the sole owner of the Patent, the documents submitted by Plaintiffs in connection with its opposition papers support that Astilean owned the Patent prior to June 1, 2015.[1] The Assignment document reveals that

---

[1] As set forth above, because the motion to dismiss the patent infringement claim is brought pursuant to Fed. R. Civ. P. 12(b)(1), the Court may consider material outside the complaint. *See Forbes*

Astilean and another individual, Dan Bostan, assigned their rights, titles, and interests in U.S. Patent Nos. 8,343,016 and 8,308,619 to Speedfit on June 1, 2015. Vodopia Decl. at Ex. B (Assignment), DE [28-2], at 1.  As Defendants point out, the Patent at issue in this case is "United States Patent No. 8,690,738," which is not mentioned in the written Assignment.  *See* Am. Compl. ¶ 8.  However, the Patent itself states that it is a "[c]ontinuation of application . . . Pat. No. 8,343,016, and a continuation-in-part of . . . now Pat. No. 8,308,619."  *Id.* at Ex. A at 1.  Further, Plaintiffs' counsel states by way of declaration that the Patent "derives priority under the law from U.S. Patent Nos. 8,308,619 and 8,343,016 . . . ."  Vodopia Decl. at ¶ 3. Taken together, these documents and assertions demonstrate that Astilean owned the Patent and assigned it to Speedfit on June 1, 2015. Whether the Patent was actually infringed during the time prior to the assignment is a matter to be resolved through further litigation, but Plaintiffs have demonstrated that both Astilean and Speedfit have standing to sue for infringement.

Accordingly, the Court recommends that Defendants' motion to dismiss the patent infringement claim as to Astilean due to a lack of standing be denied.

**B. <u>Breach of Contract</u>**

Plaintiffs assert that all Defendants breached the Manufacturing Agreement and Non-Disclosure Agreement.  Defendants argue that the Weinsteins and Samsara cannot be held liable under the agreements as they were not signatories to either,

---

*v. State Univ. of N.Y. at Stony Brook*, 259 F. Supp. 2d 227, 231-32 (E.D.N.Y. 2003) ("In a Rule 12(b)(1) motion, the Court may consider affidavits and other material beyond the pleadings to resolve the jurisdictional question.")

and, in any event, there was no breach of the Non-Disclosure Agreement or the Manufacturing Agreement.  Defs. Mem. Law at 12-15.

### 1. The Weinsteins

#### i. Pleading "Upon Information and Belief"

As an initial matter, Defendants challenge relevant facts pleaded "upon information and belief."  Defs. Mem. Law at 15.  The Second Circuit has held that a plaintiff is not precluded from pleading facts upon information and belief "where the facts are peculiarly within the possession and control of the defendant . . . or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010); *Tel. Mgmt. Corp. v. Barclays Servs. Corp.*, 11 CIV. 8570, 2013 WL 1344706, at *4 (S.D.N.Y. Mar. 28, 2013).  However, "the plaintiff should not allege upon information and belief matters that are presumptively within her personal knowledge, unless she rebuts the presumption." *Cain v. Simon & Schuster, Inc.*, 11 CIV. 4460, 2012 WL 2574747, at *2 (S.D.N.Y. July 3, 2012).  Such matters include those "of public record or matters generally known in the community . . . inasmuch as everyone is held to be conversant with them." *Id.* (quoting *Sanders v. Grenadier Realty, Inc.,* 367 Fed. App'x 173, 177 n. 2 (2d Cir. 2010)).

Here, Plaintiffs improperly plead three facts "upon information and belief" relevant to the question of whether Robert and Brian Weinstein are individually liable under the agreements:  (i) Robert Weinstein induced Astilean to enter into the Non-Disclosure Agreement "with his guarantee that the proprietary information and

know-how would be fully confidential;" (ii) Brian Weinstein personally assured Plaintiff of confidentiality; and (iii) both Weinsteins promised financial success under the Manufacturing Agreement.  *See* Am. Compl. ¶¶ 16, 17, 22.  Presumably, whether Robert and Brian Weinstein personally guaranteed confidentiality and success of a business venture to Astilean should be in Astilean's personal knowledge, and not "peculiarly within the possession and control of the [D]efendant[s]."  *See Arista Records,* 604 F.3d at 120.  Plaintiffs fail to rebut the presumption that it is in their personal knowledge, and offer no factual support for these allegations upon information and belief.  *See Peng Bai v. Fu Xing Zhuo*, 13 CIV. 05790, 2014 WL 2645119, at *4 (E.D.N.Y. June 13, 2014) ("Allegations based upon information and belief are adequate only if the relevant knowledge is solely within the possession of the opposing party or the plaintiff makes additional allegations that demonstrate the basis for the belief.").  Accordingly, the Court finds that it was improper to allege these facts "upon information and belief," and declines to consider them for the individual liability analysis.

## ii.  *Individual Liability of the Weinsteins*

Defendants dispute the Weinsteins' liability under the agreements, as Robert Weinstein signed both agreements as President of Chapco, and Brian Weinstein did not sign either agreement.  Nonetheless, Plaintiffs contend that the Weinsteins are individually liable because they engaged in months of communication regarding the business venture, and "cannot at this stage avoid liability."  *See* Pls. Mem. Law at 13.

In New York, "an agent who signs an agreement on behalf of a disclosed principal will not be individually bound to the terms of the agreement 'unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal.'" *Lerner v. Amalgamated Clothing & Textile Workers Union*, 938 F.2d 2, 5 (2d Cir. 1991) (citing *Mencher v. Weiss,* 306 N.Y. 1, 4 (1953)). In assessing whether the individual intended to be bound, five factors are analyzed: "the length of the contract, the location of the liability provision(s) in relation to the signature line, the presence of the signatory's name in the agreement itself, the nature of the negotiations leading to the contract, and the signatory's role in the corporation." *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v. Lollo*, 35 F.3d 29, 35 (2d Cir. 1994), *as amended* (Sept. 9, 1994); *see also EQT Infrastructure Ltd. v. Smith*, 861 F. Supp. 2d 220, 232 (S.D.N.Y. 2012). Further, "the most obvious indicator of the signatory's intent is the signature's form" such as that the "officer signs twice—once as an officer and again as an individual." *EQT Infrastructure Ltd.*, 861 F. Supp. 2d at 232 (quoting *Salzman Sign Co. v. Beck,* 10 N.Y.2d 63, 67, 217 N.Y.S.2d 55 (1961)).

Here, the Court concludes that the Amended Complaint fails to allege facts sufficient to hold Robert or Brian Weinstein personally liable under the agreements. Only two factors favor Plaintiffs—the short length of the agreements, as the Non-Disclosure Agreement and Manufacturing Agreement are two and seven pages, respectively, and the signatory's role in the corporation as Robert Weinstein signed as President of Chapco. *See Integrated Mktg. & Promotional Sols., Inc. v. JEC*

*Nutrition, LLC*, 06 CIV. 5640, 2006 WL 3627753, at *6 (S.D.N.Y. Dec. 12, 2006) ("[Corporate officer's] position of prominence and control in his company weighs in favor of finding that he intended to be bound by the personal guarantee clause."). All other factors, however, favor Defendants. Neither agreement references individual liability or a guarantee clause. Robert Weinstein's name is only present in the signature line where he signed as President of Chapco, and Brian Weinstein's name is not mentioned in either agreement. Facts concerning the negotiations surrounding the execution of the agreements are not alleged, and the Court declines to consider the facts pleaded "upon information and belief" for the reasons set forth above. Finally, neither officer signed the agreement in both individual and corporate capacities—in fact, Brian Weinstein did not sign the agreements at all.

On balance, Plaintiffs have not alleged in the Amended Complaint that the Weinsteins clearly intended to be bound by both agreements. Accordingly, the Court recommends that Plaintiffs' breach of contract claim be dismissed as to Robert and Brian Weinstein.

### 2. <u>Samsara</u>

Defendants assert that Samsara cannot be liable for breach of contract as it is not a party to the agreements and was formed four years after the agreements were executed. Defs. Mem. Law at 14. In general, a contract will not bind "a non-party unless the contract was signed by the party's agent, the contract was assigned to the party, or the signatory is in fact the 'alter ego' of the party." *Glob. Entm't, Inc. v. N. Y. Tel. Co.*, 00 CIV. 2959, 2000 WL 1672327, at *7 (S.D.N.Y. Nov. 6, 2000). Here,

there are no allegations in the Amended Complaint that Chapco signed the Non-Disclosure Agreement as an agent of Samsara, that the agreement was assigned to Samsara, or that Chapco was Samsara's "alter ego."  *See Sammarco v. Big Apple Car, Inc.*, No. 08-CIV-4099, 2008 WL 5111124, at *2 (E.D.N.Y. Dec. 4, 2008) ("The contract claims are dismissed as defendants are not parties to the contracts and the complaint contains no allegations that would make these non-parties liable for the obligations of the contracting party.").  Plaintiffs' argument that the Manufacturing Agreement states that it applies to "Chapco and its affiliates" is unavailing.  *See* Pls. Mem. Law at 13.  Although the Manufacturing Agreement does apply to Chapco and its "affiliates, successors, and assigns," Plaintiff has set forth no allegations suggesting that this language binds Samsara.  *See Glob. Entm't, Inc.*, 2000 WL 1672327, at *7 (dismissing a breach of contract claim against a non-signatory to a contract where the only allegations were that the non-party was a "service affiliate" or "subsidiary" of a signatory).  Accordingly, the Court respectfully recommends that Defendants' motion to dismiss the breach of contract claim against Samsara be granted.

### 3. Chapco

The parties do not contest that the Non-Disclosure and Manufacturing Agreements bind Chapco.  Rather, Defendants challenge whether Plaintiffs sufficiently plead a breach of the contracts sufficient to withstand a motion to dismiss.  To successfully plead a breach of contract claim, a plaintiff must allege:  "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages."  *Int'l Cards Co., v. Mastercard*

*Int'l Inc.*, 13 CIV. 2576, 2016 WL 3039891, at *3 (S.D.N.Y. May 26, 2016) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015)).

### i. *Non-Disclosure Agreement*

As an initial matter, Defendants argue that Plaintiffs improperly plead "upon information and belief" allegations regarding breach of the Non-Disclosure Agreement. *See* Def. Mem of Law at 12-13. Specifically, Plaintiffs plead "upon information and belief, Chapco utilized [confidential] contacts prior to July 14, 2012," the termination date of the Non-Disclosure Agreement. *See* Am. Compl. ¶ 19. Plaintiffs also allege that Chapco, upon information and belief, entered into a business agreement with confidential contact BRECOFlex "prior to July 13, 2012." *Id.* at ¶¶ 43. The Court finds that both allegations are properly stated upon information and belief. First, whether Chapco utilized contacts prior to July 14, 2012 is information presumably in the possession and control of Chapco, as it would have utilized such contacts. *See Tel. Mgmt. Corp.*, 2013 WL 1344706, at *5 (considering facts pleaded on "information and belief" where the information was exclusively in the possession and control of the defendant). Similarly, although Plaintiffs are aware of some agreement between Defendants and BRECOFlex, the time at which the agreement commenced is reasonably beyond Plaintiffs' knowledge. *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1224 (3d ed.) ("Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the

knowledge of the plaintiff but he has sufficient data to justify interposing an allegation . . . .”).  Thus, the Court considers these allegations in its analysis.

Here, the parties dispute only whether the third element of a breach of contract claim—the breach—is sufficiently pleaded.  Upon review of the Non-Disclosure Agreement, which is attached as Exhibit B to the Amended Complaint, the Court concludes that the Amended Complaint plausibly alleges a breach.  The Non-Disclosure Agreement states that the parties agree to refrain from “contact[ing], deal[ing] with, negotiat[ing] or participat[ing] in any transactions” with any confidential contact.  Am. Compl. Ex. B. at 1.  In the Amended Complaint, Plaintiffs assert that Chapco used confidential contacts during the term of the contract.  *Id.* at ¶ 19.  Plaintiffs provide the specific example of BRECOFlex, which Plaintiffs allege entered into an agreement with Chapco during the term of the Non-Disclosure Agreement.  *Id.* at ¶¶ 43, 45.  Assuming these facts are true, which the Court does for the purposes of this motion, this is sufficient to allege a breach.

Accordingly, because Plaintiffs state a plausible breach of contract claim with respect to the Non-Disclosure Agreement, the Court recommends that Defendants’ motion to dismiss this claim as to Chapco be denied.

## ii.  *Manufacturing Agreement*

Defendants also argue that the Amended Complaint fails to allege a cognizable claim for breach of the Manufacturing Agreement.  Plaintiffs respond that the agreement was breached in two ways:  (i) Defendants failure to provide five

production ready models of the Speedboard; and (ii) that Defendants manufactured and sold Plaintiffs' treadmill under its own name.  *See* Am. Compl. ¶¶ 62-63.

Regarding the first theory, the Court finds that whether the failure to produce five ready-made models constitutes a breach is adequately alleged.  In Section II, the Manufacturing Agreement states "Speedfit agrees to grant Chapco the exclusive international manufacturing rights of the SpeedBoard for a period of three (3) years from the date of delivery to SpeedFit of five (5) production-ready models of the SpeedBoard . . . ."  *Id.* at Ex. C at II.A.  Defendants argue that this is a condition precedent to the grant of exclusivity, and thus failure to produce the models is not a breach of the agreement.  However, Section V of the Manufacturing Agreement states that "[t]he Parties agree that this relationship shall result in the construction by Chapco, at Chapco's sole investment and expense, of five (5) production-ready models of the SpeedBoard . . . ."  Am. Compl. Ex. C. at V.A.  Under this provision, and taking Plaintiffs' allegation that Defendants failed to produce five ready-made models as true, the Court finds this sufficient to allege a breach and withstand a motion to dismiss.

The Court also concludes that Plaintiffs plausibly alleged a breach under the second theory, namely that Defendants stole the design of the Speedboard in violation of the Manufacturing Agreement.  *See* Am. Compl. ¶ 63.  Defendants urge that this was not a breach, as "nothing in the Manufacturing Agreement requires Chapco to manufacture treadmills exclusively for Speedfit."  Defs. Mem. Law at 14.  However, Plaintiffs are not challenging exclusivity, but rather asserting that theft of

19

intellectual property rights is a breach.  The Manufacturing Agreement states that the intellectual property rights will remain exclusively with Speedfit.  *Id.* at Ex. C. at IV.  Assuming that Plaintiffs' allegations are true—that Defendants stole the design of the Speedboard in violation of the intellectual property rights granted to Speedfit in the Manufacturing Agreement—the Amended Complaint sufficiently alleges a breach.

Accordingly, the Court recommends that the motion to dismiss the breach of the Manufacturing Agreement claim as to Chapco be denied.

### C. <u>Breach of Fiduciary Duty</u>

Defendants further seek dismissal of the breach of fiduciary duty claim, arguing that there was no fiduciary relationship between the parties.  Defs. Mem. Law at 16.  Plaintiffs, however, allege that a fiduciary relationship existed by virtue of:  (i) Defendants' promise "to form a stand-alone LLC for the business venture of which Speedfit, LLC was to be the sole founding member . . . which demanded a relationship of trust and confidence;" (ii) Plaintiffs' disclosure of intellectual property rights to Defendants; and (iii) that "[u]pon information and belief" the Weinsteins "personally assured Plaintiffs of the financial success and future profits to come from said venture, which demanded a relationship of trust and confidence . . . ." *Id.* at ¶¶ 73-76.

In New York, the elements for a breach of fiduciary duty claim are:  "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir.

2011).   A fiduciary relationship exists between two parties where "one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 19, 799 N.Y.S.2d 170 (2005) (citation omitted).   This relationship is "grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions." *Id.*; *see also Krys v. Butt*, 486 F. App'x 153, 155 (2d Cir. 2012).   When parties deal at arm's length, "no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." *Boccardi Capital Sys., Inc. v. D.E. Shaw Laminar Portfolios, LLC*, 355 F. App'x 516, 519 (2d Cir. 2009) (citation omitted).   Further, "[i]f the parties . . . do not create their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them." *EBC I, Inc.*, 5 N.Y.3d at 20, 799 N.Y.S.2d 170 (citation omitted).

Here, the Amended Complaint fails to plausibly allege a fiduciary relationship. Although Plaintiffs assert that they disclosed intellectual property to Defendants, receiving confidential information does not, alone, create a fiduciary relationship. *Boccardi*, 355 F. App'x at 519 ("Nor would [defendant's] receipt of confidential information, without more, transform it into [plaintiff's] fiduciary.").   Plaintiffs also do not allege extraordinary circumstances suggesting that the relationship extended past an arm's length transaction, such as that Defendants knowingly placed themselves in an advisory position. *Cf. Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 599 (2d Cir. 1991) (finding a fiduciary relationship where there was a long-

standing relationship and the fiduciary provided "investment advice and services.");
*JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, 08-CIV-9116, 2009 WL 321222, at
*10 (S.D.N.Y. Feb. 9, 2009) ("JPMorgan has alleged a relationship in which IDW
served as its adviser, in a position of extraordinary trust, and under circumstances
in which it assumed, and may have been entitled to assume, that IDW would act with
JPMorgan's best interests in mind.").   Although Plaintiffs claim that Defendants
promised to "form a stand-alone LLC for the business venture of which Speedfit, LLC
was to be a sole founding member," no facts are alleged regarding who made this
specific promise or under what circumstances.   *See* Am. Compl. ¶ 73.   Further, the
Court declines to consider Plaintiffs' assertion that the Weinsteins, "upon information
and belief" personally assured Plaintiffs of financial success, as this information
should presumably be in Plaintiffs' personal knowledge and thus was impermissibly
alleged "upon information and belief."

Accordingly, the Amended Complaint fails to plausibly allege that a fiduciary
duty was owed to Plaintiffs, and the Court respectfully recommends that Plaintiffs'
breach of fiduciary duty cause of action be dismissed.

**D. <u>Conversion</u>**

Defendants seek to dismiss the conversion claim as duplicative of Plaintiffs'
breach of contract cause of action.   *See* Defs. Mem. Law at 18-19.   The Court agrees.
In New York, "a claim to recover damages for conversion cannot be predicated on a
mere breach of contract."   *Benex LC v. First Data Merch. Servs. Corp.*, 14-CV-6393,
2016 WL 1069657, at *5 (E.D.N.Y. Mar. 16, 2016) (quoting *Wolf v. Nat'l Council of*

*Young Isr.*, 264 A.D.2d 416, 417, 694 N.Y.S.2d 424, 425 (2d Dep't 1999)); *see also Giugliano v. FS2 Capital Partners, LLC*, 14-CV-7240, 2015 WL 5124796, at *16 (E.D.N.Y. Sept. 1, 2015) (collecting cases).  Rather, "a plaintiff must allege acts that are unlawful or wrongful as distinguished from acts that are a mere violation of contractual rights." *Elsevier Inc. v. Memon*, 97 F. Supp. 3d 21, 37 (E.D.N.Y. 2015) (citation omitted).

Here, the conversion claim is predicated on the same rights that support the breach of contract cause of action.  In fact, the allegations for both claims are parallel. *Compare* Am. Compl. ¶ 63 (alleging a breach of "the Manufacturing Agreement by taking the design for the Speedboard, manufacturing and selling . . . [the Samsara Product] . . . in violation of the IP Rights granted to Speedfit in the Manufacturing Agreement."), *with id.* at ¶ 83 (stating for its conversion claim that Defendants "coopted the design specifications of the Speedboard, and have instead begun manufacturing [the Samsara Product] . . . ."), *and id.* at ¶ 84 (alleging for conversion that "Defendants exercised an unauthorized dominion over the intellectual property of Plaintiffs . . . .").  These parallel allegations demonstrate that the conversion claim is based on Plaintiffs' contractual rights under the Manufacturing Agreement regarding the intellectual property rights of the Speedboard.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Monarch Payroll, Inc.*, 15-CV-3642, 2016 WL 634083, at *6 (S.D.N.Y. Feb. 17, 2016) ("A plaintiff must plausibly allege[] that the defendant violated a duty that is distinct from its contractual obligations.").  In fact, the damages sought for both claims are the same—unpaid proceeds from sales of the

Samsara Product in excess of $10 million dollars—further suggesting that the claims are duplicative and that Plaintiffs will be fully compensated if successful on their breach of contract claim.  Am. Compl. ¶¶ 69, 86-87; *see Citadel Mgmt., Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 149 (S.D.N.Y. 2000) ("Citadel would be fully compensated for its loss if it prevailed on a contract claim against Equal, so no additional damages would be warranted in conversion.").

Accordingly, for the reasons set forth above, the Court recommends that Defendants' motion to dismiss the conversion claim be granted.

### E.  Unjust Enrichment & Constructive Trust

Similarly, Defendants move to dismiss the unjust enrichment and constructive trust causes of action because there is an adequate remedy at law.  Claims of unjust enrichment and constructive trust are equitable in nature and generally are not permitted if a legal remedy is available.  *See Int'l Equity Invs., Inc. v. Opp. Equity Partners Ltd.*, 472 F. Supp. 2d 544, 555 (S.D.N.Y. 2007) ("[T]he existence of an adequate legal remedy precludes a remedy for unjust enrichment."); *In re First Cent. Fin. Corp.*, 377 F.3d 209, 215 (2d Cir. 2004) ("With respect to constructive trusts specifically, New York courts have clarified that '[a]s an equitable remedy, a constructive trust should not be imposed unless it is demonstrated that a legal remedy is inadequate.'") (quoting *Bertoni v. Catucci,* 117 A.D.2d 892, 895, 498 N.Y.S.2d 902, 905 (1986)).  Such claims are "precluded by the existence of an express written agreement governing the subject matter at issue."  *See Boccardi*, 355 F. App'x at 519; *Abraham v. Am. Home Mortgage Servicing, Inc.*, 947 F. Supp. 2d 222, 235

(E.D.N.Y. 2013) ("It is well established that the existence of a contract precludes a claim for a constructive trust.").

Here, the unjust enrichment and constructive trust claims should be dismissed because there is an adequate remedy at law.  For their breach of contract claim, Plaintiffs demand damages based on the proceeds from the sale of the Samsara Product. *Id.* at ¶ 69.  This is the same remedy that Plaintiffs seek with their unjust enrichment and constructive trust causes of action.  *See* Am. Compl. ¶¶ 90-93 (seeking proceeds of the sales of the Samsara Product under an unjust enrichment theory); *id.* at ¶¶ 98-101 (requesting a constructive trust over Chapco's assets because Defendants' allegedly stole Plaintiffs' intellectual property rights which led to the manufacture and sale of the Samsara Product).  As such, Plaintiffs have a contractual claim against Defendants regarding the same subject matter supporting its unjust enrichment and constructive trust claims, and no facts are alleged demonstrating why the legal remedy is inadequate. *See In re First Cent. Fin. Corp.*, 377 F.3d at 213 ("[W]e conclude that this principle-that the existence of a written agreement precludes a finding of unjust enrichment-also applies to constructive trust claims . . . ."). Accordingly, the Court recommends that Defendants motion to dismiss the unjust enrichment and constructive trust claims be granted.[2]

_____

[2] Plaintiffs contend that a party may plead a breach of contract and an unjust enrichment claim where there is "a bona fide dispute regarding the existence of a contract." Pls. Mem. Law at 18. Specifically, they argue that Defendants questioned the existence of the Manufacturing Agreement by suggesting that the requirement to produce five ready-made models is a condition precedent to the contract. *Id.* at 19.  However, Defendants argue that the production of the ready-made models was a condition precedent "to the three-year period of manufacturing exclusivity and revenue sharing," and not the entire agreement.  Defs. Mem. Law at 13.  As Defendants are not challenging the existence of the Manufacturing Agreement, Plaintiffs' argument fails.  *See Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690, 636 N.Y.S.2d 734 (1995) ("Most conditions precedent describe

## F. **Punitive Damages**

Defendants also seek to dismiss the request for punitive damages for Plaintiffs' breach of contract, breach of fiduciary duty, conversion, and unjust enrichment claims. *See* Am Compl. ¶¶ 69, 79, 87, 93. The Court considers punitive damages as relief only for the breach of contract claim, having concluded that the Amended Complaint fails to allege another cause of action sufficient to survive Defendants' motion. Under New York law, "[a] party seeking punitive damages where the claim arises from a breach of contract must demonstrate that (1) defendant's conduct is actionable as an independent tort; (2) the tortious conduct is of an egregious nature; (3) the conduct was directed to the plaintiff; and (4) the conduct is part of a pattern directed at the public generally." *Catskill Assocs., LLC v. Benza*, 108-CV-598, 2009 WL 1294608, at *3 (N.D.N.Y. May 7, 2009) (citing *N.Y. Univ. v. Cont'l Ins. Co.,* 87 N.Y.2d 308, 315–16, 639 N.Y.S.2d 283, 287 (1995)). "Punitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights." *IMR Assocs., Inc. v. C.E. Cabinets, Ltd.*, 06-CV-5965, 2007 WL 1395547, at *8 (E.D.N.Y. May 11, 2007) (internal quotation omitted). Here, Plaintiffs fail to meet this standard. First, the Court has already determined that none of Plaintiffs' tort claims withstand the motion to dismiss, and therefore Defendants' conduct is not actionable as an independent tort.

---

acts or events which must occur before a party is obliged to perform a promise made pursuant to an existing contract, a situation to be distinguished conceptually from a condition precedent to the formation or existence of the contract itself.").

Second, the Amended Complaint is devoid of facts suggesting harm to the public generally.  *See U.S. for Use & Benefit of Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 161 (2d Cir. 1996) (affirming a dismissal of punitive damages made pursuant to a breach of contract claim where no allegations "evince[d] a pattern of conduct harming the general public"); *Bertucci v. 21st Century Ins.*, 50 Misc. 3d 1214(A), 31 N.Y.S.3d 920, at *4 (N.Y. Sup. Ct. 2016) (dismissing punitive damages for a breach of contract claim where no facts alleged conduct "directed at the public generally").  Accordingly, the Court respectfully recommends that Plaintiffs' claim for punitive damages pursuant to the breach of contract claim be dismissed.

## IV.   CONCLUSION

For the reasons set forth herein, the Court recommends that:  (i) Defendants' motion to dismiss the patent infringement claim as to Astilean be denied; (ii) Defendant's motion to dismiss the breach of contract claim as to Chapco be denied; (ii) Defendants' motion to dismiss the breach of contract claim at to Robert Weinstein, Brian Weinstein, and Samsara be granted; (iii) Defendants' motion to dismiss as to all Defendants the breach of fiduciary duty, conversion, unjust enrichment, and constructive trust claims be granted; and (iv) that Plaintiffs' claim for punitive damages under its breach of contract claim be dismissed.

## V.   OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below.   Any objections to this Report and

Recommendation must be filed with the Clerk of Court within fourteen days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
       June 29, 2016

s/ Steven I. Locke<br>STEVEN I. LOCKE<br>United States Magistrate Judge