UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
SPEEDFIT LLC and AUREL A. ASTILEAN,

                          Plaintiffs,

                - against -

CHAPCO INC. and SAMSARA FITNESS
LLC,

                       Defendants.
-------------------------------------------------------x

                     **<ins>MEMORANDUM & ORDER</ins>**
                     15-CV-1323 (PKC) (RLM)

PAMELA K. CHEN, United States District Judge:

       Plaintiffs Speedfit LLC and Aurel A. Astilean bring this action against Defendants Chapco

Inc. and Samsara Fitness LLC, advancing claims of patent infringement and breach of contract.

Currently before the Court are Defendants' second motion for summary judgment and their motion

to strike Plaintiff Astilean's affidavit in support of Plaintiffs' response to the summary judgment

motion.  (Dkts. 80, 90.)  For the reasons stated below, the Court grants Defendants' motion for

summary judgment and denies their motion to strike.

1

## BACKGROUND

### I.      Relevant Facts[1]

U.S. Patent No. 8,690,738 (the "'738 Patent"), entitled "Leg-Powered Treadmill," was

issued to Plaintiff Astilean on April 8, 2014 from U.S. Application No. 13/711,074 filed with the

U.S. Patent and Trademark Office (the "PTO") on December 11, 2012.  (Defendants' 56.1

Statement ("Defs.' 56.1"), Dkt. 82, ¶ 1; Exhibit A, Dkt. 83-1.)  Plaintiffs accuse Defendant

Samsara of infringing the '738 Patent by selling the TrueForm Runner ("TrueForm").  (Defs.'

56.1, Dkt. 82, ¶ 2.)  The '738 Patent has one independent claim, Claim 1, and eight dependent

claims.  (*Id.* ¶ 3.)  Claim 1 of the '738 Patent states:

> A motor-less, leg-powered curved treadmill comprising:
>
> a treadmill frame having peripheral left and right sides;
>
> a concave row of upper support peripheral ball bearings located at each of the peripheral left and right sides of the treadmill frame; and
>
> a set of respective front and rear pulley end rollers for rotation;

---

[1] The Court presumes the parties' familiarity with the facts and procedural history of this case, which are set forth in detail in the Court's September 26, 2019 Memorandum & Order partially granting and denying Defendants' first motion for summary judgment (Dkt. 62), and only recites facts relevant to this motion for summary judgment.  (*See* Dkt. 62.)

Unless otherwise noted, a standalone citation to a party's 56.1 statement denotes that this Court has deemed the underlying factual allegation undisputed.  Any citation to a party's 56.1 statement incorporates by reference the documents cited therein.  Where relevant, however, the Court may cite directly to the underlying document.  The Court has deemed facts averred in a party's 56.1 statement to which the opposing party cites no admissible evidence in rebuttal as undisputed.  *See Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881 (TCP), 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 12, 2012) ("Eastern District Local Rule 56.1 requires . . . that disputed facts be *specifically* controverted by admissible evidence.  Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything." (emphasis in original)).  Additionally, to the extent a party's 56.1 statement "improperly interjects arguments and/or immaterial facts in response to facts asserted by [the opposing party] without specifically controverting those facts," the Court has disregarded the statement.  *See Risco v. McHugh*, 868 F. Supp. 2d 75, 87 n.2 (S.D.N.Y. 2012) (citations omitted).

a closed loop treadmill belt, wherein said front and rear pulley end rollers support said closed loop treadmill belt;

wherein said closed loop treadmill belt comprises a plurality of parallel transverse slats oriented perpendicular to an axis of rotation of said belt and attached to each other in a resilient fashion; and

wherein each said transverse slat includes a plurality of fins connected to and extending outward from each said transverse slat and formed with a material with sufficient resiliency, strength and weight to lie on and conform to the respective concave rows of the upper support peripheral ball bearings.

(Exhibit A, Dkt. 83-1, at ECF[2] 16.)  Claim 6 of the '738 Patent states that "[t]he motor-less, leg-powered curved treadmill as in claim 1 wherein said transverse slats are made of a material selected from the group consisting of rubber, plastic and wood."  (*Id.* at ECF 17.)  Claim 9 of the '738 Patent states that

[t]he motor-less, leg-powered curved treadmill as in claim 1, wherein each said row of peripheral ball bearings are spaced apart from each other on the respective left and right sides of said treadmill frame, wherein said fins of said transverse slats extend cantilevered outward into a vacant mid-section of said treadmill from each said transverse slat and wherein said resiliency enables said transverse slats to dip slightly under the weight of the user runner without any lower support below non-peripheral mid-sections of said transverse slats.

(*Id.*)

During the prosecution of the '738 Patent, the PTO Examiner issued an Office Action on May 22, 2013.  (Exhibit I, Dkt. 83-9.)  Among other issues, the PTO Examiner found that

[c]laims 1–10 are rejected on the ground of nonstatutory obviousness-type double patenting as being unpatentable over the claims of U.S. Patent No. 8,343,016 [the "'016 Patent," another of Plaintiff Astilean's patents].  Although the conflicting claims are not identical, they are not patentably distinct from each other because it is clear that all the elements of the present claims are found in the claims of the ['016] patent.  The difference between the former and the latter lies in the fact that the ['016] patent claims include many more elements and is much more specific.  Thus, the invention of the patent [is] in effect a "species" of the "generic" invention

_____

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

of the present claims.  It has been held that the generic invention is "anticipated"
by the "species."

(*Id.* at ECF 6–7 (citation omitted).)  In response, Plaintiff Astilean submitted a terminal disclaimer[3]

as to the '738 Patent.  (Exhibit J, Dkt. 83-10, at ECF 9.)  On December 20, 2013, the PTO Examiner

in another Office Action noted that the applicant "canceled claims 11–13 thereby eliminating any

potentially interfering claims with respect to U.S. Patent Application 13/235,065."  (Exhibit 6,

Dkt. 86-6, at ECF 7.)

    While this case was pending, Plaintiffs were involved in another patent infringement

lawsuit before the Honorable Kiyo A. Matsumoto of this District.  *See Speedfit LLC v. Woodway*

*USA, Inc. ("Woodway")*, 432 F. Supp. 3d 183 (E.D.N.Y. 2020).  In *Woodway*, Plaintiffs asserted,

*inter alia*, that Woodway's Speedboard 2/Curve ("Speedboard") infringed "U.S. Patent No.

8,308,619 ("'619 Patent"), entitled 'Leg-Powered Treadmill,' [which] was filed on October 29,

2010[] and issued to Plaintiff Astilean on November 13, 2012," and "U.S. Patent No. 8,343,016

(the ''016 Patent' . . . ), also entitled 'Leg-Powered Treadmill,' [which] was filed on November 1,

2010[] and issued" to Plaintiff Astilean on January 1, 2013.  *See id.* at 195 (citations omitted).  The

'738 Patent is a continuation of the '016 Patent.[4]  (Defs.' 56.1, Dkt. 82, ¶¶ 6–7, 47.)  The '016

---

[3] A terminal disclaimer "limits the term of the later patent (and the protection afforded thereto) to the same period as the earlier one, thereby guaranteeing that the second patent would expire at the same time as the first."  *Orenshteyn v. Int'l Bus. Machs., Corp.*, 979 F. Supp. 2d 448, 452 (S.D.N.Y. 2013) (internal quotation marks and citations omitted).

[4] "A continuation patent application is 'an application filed subsequently to another application, while the prior application is pending, disclosing all or a substantial part of the subject matter of the prior application and containing claims to subject-matter common to both applications, both applications being filed by the same inventor.'"  *Allergan, Inc. v. Sandoz, Inc.*, 681 F. App'x 955, 957 n.1 (Fed. Cir. 2017) (quoting *U.S. Water Servs., Inc. v. Novozymes A/S*, 843 F.3d 1345, 1348 n.1 (Fed. Cir. 2016)).

Patent has one independent claim, Claim 1, and sixteen dependent claims.  (*Id.* ¶ 8.)  Claim 1 of

the '016 Patent states:

> A motor-less, leg-powered curved treadmill comprising:
>
> a treadmill frame;
>
> a set of respective front and rear pulley end rollers for rotation, said front and rear pulleys supporting a closed loop treadmill belt;
>
> said closed loop treadmill belt comprising a plurality of parallel slats oriented perpendicular to an axis of rotation of said belt, said parallel slats attached to each other in a resilient fashion;
>
> said closed loop treadmill belt being of such a length as compared to the distance between the end rollers to permit it to assume a required concave upper contour;
>
> a means for slackening an upper concave portion while simultaneously keeping a lower portion of the belt taut, preventing said lower portion from drooping down during rotation and exertion of walking or running force upon said upper concave portion of said closed loop treadmill belt;
>
> wherein each said slat is made of a material with sufficient resiliency and strength and weight to lie on and conform to a concave row of upper support peripheral ball bearings located at each peripheral side of said upper portion of said motor-less, leg-powered curved treadmill.

(Exhibit C, Dkt. 83-3, at ECF 13.)  Claim 6 of the '016 Patent states that "[t]he motor-less, leg-

powered curved treadmill as in claim 1 wherein each said slat includes at least one fin descending

downward from each said slat."  (*Id.* at ECF 14.)  Claim 7 of the '016 Patent states that "[t]he

motor-less, leg-powered curved treadmill as in claim 6 wherein each said slat includes a plurality

of fins descending downward from each said transverse slat."  (*Id.*)  Claim 8 of the '016 Patent

states that

> [t]he motor-less, leg-powered curved treadmill as in claim 6 wherein each said row[] of peripheral bearings are spaced apart from each other on respective left and right sides of said curved treadmill, wherein further said fins of said slats extend cantilevered downward into a vacant mid-section of said treadmill from each said slat so that said slats are resilient to dip slightly under the weight of a user runner without any lower support below non-peripheral mid-sections of said slats.

(*Id.*)  Claim 9 of the '016 Patent states that "[t]he motor-less, leg-powered curved treadmill as in claim 1 wherein said transverse slats are made of a material selected from the group consisting of rubber, plastic and wood."  (*Id.*)

Judge Matsumoto concluded in *Woodway* that the '016 Patent was "not entitled to the earlier priority date of the [Provisional Application No. 61/280,265], and the on-sale bar renders the [] '016 Patent[] invalid."  432 F. Supp. 3d at 211.  Specifically, Judge Matsumoto found that the Speedboard, which anticipated the '016 Patent, was on sale under 35 U.S.C. § 102(b) at least one year before the filing date of the '016 Patent, and thus the '016 Patent was invalid under the on-sale bar.  *Id.* at 203.  Judge Matsumoto further found that the '016 Patent cannot rely on the priority date of the No. 61/280,265 Provisional Application (the "'265 Application").  *Id.* at 205–06.  Judge Matsumoto found that the '265 Application "did not disclose the pertinent claim limitations of the '016 Patent," such as "upper support peripheral ball bearings" and the "means for slackening," and therefore it "did not convey with reasonable clarity that, as of November 2, 2009 [the filing date of the '265 Application], [P]laintiffs were in possession of the curved, non-motorized treadmill invention claimed by" the '016 Patent.  *Id.* at 205.

## II.    Procedural History

On March 13, 2015, Plaintiffs commenced this action.  (*See* Dkt. 1.)  Thereafter, on August 11, 2015, Plaintiffs filed an amended complaint in which they advanced claims for patent infringement, breach of contract, breach of fiduciary duty, conversion, unjust enrichment, and constructive trust.  (*See* Dkt. 21, ¶¶ 48–101.)  After the breach of fiduciary duty, conversion, and unjust enrichment claims were dismissed at the pleadings stage, *see Speedfit LLC v. Chapco Inc.*, No. 15-CV-1323 (JMA) (SIL), 2016 WL 5793738, at *11 (E.D.N.Y. June 29, 2016), *report and recommendation adopted*, 2016 WL 5678812 (E.D.N.Y. Sept. 30, 2016), the patent infringement

and breach of contract claims proceeded to discovery (*see* Apr. 13, 2017 Order).  Defendants' first motion for summary judgment was fully briefed on October 18, 2018 (Dkts. 57–59), which the Court granted in part and denied in part on September 26, 2019 (Dkt. 62).  Thereafter, the parties filed motions for reconsideration (Dkts. 65, 67), which the Court denied on February 14, 2020, *see Speedfit LLC v. Chapco Inc.*, No. 15-CV-1323 (PKC) (RLM), 2020 WL 758824 (E.D.N.Y. Feb. 14, 2020).

In light of Judge Matsumoto's *Woodway* decision issued on January 9, 2020, Defendants filed a letter motion to stay litigation and to amend their answer.  (Dkt. 72.)  During a telephone conference on April 2, 2020, the Court denied Defendants' motion to stay the case, but granted Defendants leave to amend their answer and file a motion for summary judgment with respect to the validity of the '738 Patent.  (*See* Apr. 2, 2020 Minute Entry.)  Defendants filed their amended answer on April 9, 2020.  (Dkt. 79.)  The second motion for summary judgment was fully briefed on June 22, 2020.  (Dkts. 80, 84, 89.)  On June 22, 2020, Defendants also filed a motion to strike Plaintiff Astilean's affidavit in support of Plaintiffs' response to the summary judgment motion.  (Dkt. 90.)

## STANDARD OF REVIEW

"The standard for summary judgment in a patent case is the same as in any other case." *CA, Inc. v. Simple.com, Inc.*, 780 F. Supp. 2d 196, 208 (E.D.N.Y. 2009) (citing *Desper Prods., Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1332 (Fed. Cir. 1998)).  Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251−52 (1986) (noting that summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The initial "burden of establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Once this burden is met, however, the burden shifts to the nonmoving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of New York*, 579 F.3d 160, 166−67 (2d Cir. 2009); *see also Celotex Corp.*, 477 U.S. at 322−23. A mere "scintilla of evidence" in support of the nonmoving party is "insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252) (brackets in original). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586−87 (1986)).

In determining whether a genuine issue of fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008) (citing *Anderson*, 477 U.S. at 255). The Court also construes any disputed facts in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247−48 (emphasis omitted).

**DISCUSSION**

## I.     Motion to Strike

Defendants move this Court to (1) strike the Astilean Declaration and (2) disregard the portion of Plaintiff's briefings that rely on that declaration.  (Defs.' Mem. of Law in Support of Mot. to Strike, Dkt. 91, at 1.)  However, "[a] motion to strike is not an appropriate vehicle for contesting affidavits. . . .  On summary judgment, however, courts have been willing to view motions to strike as calling the propriety of affidavits into question."  *Noval Williams Films LLC v. Branca*, No. 14-CV-4711 (PAC), 2018 WL 389092, at *2 n.2 (S.D.N.Y. Jan. 11, 2018) (internal quotation marks and citations omitted).  Therefore, the Court denies the motion to strike, but analyzes the propriety of the Astilean Declaration based on Defendants' arguments.

Federal Rule of Civil Procedure 56(c)(4) requires that affidavits submitted to support or oppose a summary judgment motion "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."[5] Fed. R. Civ. P. 56(c).  "When an affidavit does not comply with these basic requirements, the offending portions should be disregarded by the court."  *Wilson v. Sessoms-Newton*, No. 14-CV-106 (PKC) (ST), 2017 WL 5508365, at *2 (E.D.N.Y. Nov. 15, 2017) (citation omitted).  Federal Rule of Evidence 701 allows opinion testimony of a lay witness that is "not based on scientific, technical, or other specialized knowledge."  Fed. R. Evid. 701.

In the patent context, "a witness [should not] testify as an expert on the issues of

---

[5] For an expert opinion to be considered at summary judgment, it must be disclosed under Federal Rule of Civil Procedure 26, "unless the failure [to disclose] was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1); *see also* Fed. R. Civ. P. 26(a)(2)(D) ("A party must make these disclosures [of expert testimony] at the times and in the sequence that the court orders.").  The Honorable Steven I. Locke ordered expert disclosure to be completed in this case by June 8, 2018.  (*See* July 11, 2018 Order.)

noninfringement or invalidity unless that witness is qualified as an expert in the pertinent art." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1363 (Fed. Cir. 2008); *see also id.* ("[W]here an issue calls for consideration of evidence from the perspective of one of ordinary skill in the art, it is contradictory to Rule 702 to allow a witness to testify on the issue who is not qualified as a technical expert in that art."). Specifically, "a witness not qualified in the pertinent art may not testify as an expert" on issues of invalidity, such as "anticipation, or any of the underlying questions, such as the nature of the claimed invention, what a prior art reference[] discloses, or whether the asserted claims read on the prior art reference." *Id.* at 1364 (citing *Acoustical Design, Inc. v. Control Elecs. Co., Inc*, 932 F.2d 939, 942 (Fed. Cir. 1991)). Similarly, that witness may not testify

> on obviousness, or any of the underlying technical questions, such as the nature of the claimed invention, the scope and content of prior art, the differences between the claimed invention and the prior art, or the motivation of one of ordinary skill in the art to combine these references to achieve the claimed invention.

*Id.* (citation omitted).

When an inventor has not been qualified as an expert or has not provided expert reports, he may testify "about the patents [he] invented based on [his] personal knowledge," but not give expert testimony on issues such as invalidity. *Verizon Servs. Corp. v. Cox Fibernet Virginia, Inc.*, 602 F.3d 1325, 1339–40 (Fed. Cir. 2010). In addition, "the inventor may provide testimony explaining the claimed invention and its development, but . . . 'the inventor [cannot] by later testimony change the invention and the claims from their meaning at the time the patent was drafted and granted.'" *Id.* at 1340 (quoting *Voice Techs. Grp., Inc. v. VMC Sys., Inc.*, 164 F.3d 605, 615–16 (Fed. Cir. 1999)). Nonetheless, "inventors may testify about matters within their personal knowledge, even if those matters touch upon technical issues." *Medisim Ltd. v. BestMed LLC*, 910 F. Supp. 2d 591, 622 (S.D.N.Y. 2012) (citations omitted).

10

The parties do not dispute that Plaintiffs have not disclosed Plaintiff Astilean as an expert (Defs.' Mem. of Law in Support of Mot. to Strike, Dkt. 91, at 1; *see* Pls.' Opp. to Mot. to Strike, Dkt. 92, at 6), and therefore he may testify based on his personal knowledge, but not on issues that require expert testimony.[6]  Plaintiff Astilean, as the inventor of both the '016 Patent and the '738 Patent and someone who participated in the development of the Speedboard and the TrueForm (Astilean Declaration, Dkt. 86-5, ¶¶ 3, 5; Exhibit C, Dkt. 83-3, at ECF 2), has personal knowledge about the claimed inventions and their developments, and may testify about those subjects.  *See Verizon Servs. Corp.*, 602 F.3d at 1340; *523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600, 635 (S.D.N.Y. 2014) (finding that declarants may testify to their personal knowledge of the development of a software in which they participated).

However, in his declaration, Plaintiff Astilean also gives improper testimony and makes improper conclusions, such as whether the Speedboard anticipates the '738 Patent (*e.g.*, Astilean Declaration, Dkt. 86-5, ¶ 26 ("[C]laim 1 of the '738 patent, while [] reads on the TrueForm Runner, does not read on the Speedboard 2/Curve."); *id.* ¶ 41 ("At least one fin is not equivalent to a plurality of fins because one fin can never be a plurality of fins as claimed.  Claim 1 is not

---

[6] Defendants also seek to strike the portions of Plaintiff Astilean's declaration that are conclusory or speculative.  (Defs.' Mem. of Law in Support of Mot. to Strike, Dkt. 91, at ECF 13.) "[A] court may, in considering a motion for summary judgment, simply decline to consider those aspects of a supporting affidavit that do not appear to be based on personal knowledge or are otherwise inadmissible." *Peters v. Molloy Coll. of Rockville Ctr.*, No. 07-CV-2553 (DRH) (ETB), 2010 WL 3170528, at *2 (E.D.N.Y. Aug. 10, 2010) (quoting *Flaherty v. Filardi*, No. 03-CV-2167 (LTS) (HBP), 2007 WL 163112, at *4 (S.D.N.Y. Jan 24, 2007)).  To the extent that any portion of the declaration makes improper legal conclusions or states immaterial facts, the Court has disregarded those statements. *See, e.g.*, *Shamrock Power Sales, LLC v. Scherer*, No. 12-CV-8959 (KMK), 2015 WL 5730339, at *16 (S.D.N.Y. Sept. 30, 2015) (disregarding legal conclusions and conclusory allegations); *see also Vega v. Hempstead Union Free Sch. Dist.*, No. 12-CV-6158 (SJF) (GRB), 2017 WL 10379106, at *1 (E.D.N.Y. May 18, 2017) ("If a proffered fact that is supported by admissible evidence is disputed only with inadmissible or irrelevant evidence, the Court treats that fact as undisputed.").

anticipated by the Speedboard 2/Curve.")), and whether the '016 Patent and the '738 Patent are different from each other (*e.g.*, *id.* ¶ 52 ("[C]laim 1 of the '738 patent sets forth and describes a different, patentably distinct treadmill, with a different treadmill belt, different slats and a different frame [from the '016 Patent.]")).  *See 523 IP LLC*, 48 F. Supp. 3d at 635 (finding improper declaration that was "essentially telling the jury that he [had]" found noninfringement); *id.* at 637 (finding improper testimony that "[t]he screen captures and demonstration images of the NMS Portal shown in the claim chart disclose all seven (7) elements of Claim 31").  Because Plaintiff Astilean has not been qualified as an expert in the pertinent art, the portion of his testimony set forth in the declaration on technical issues, such as "whether the asserted claims read on the prior art reference," is improper.  *Sundance, Inc.*, 550 F.3d at 1364.  Plaintiff Astilean also seems to suggest that Figure 7 of the '738 Patent represents the Speedboard, but not the TrueForm.  (Astilean Declaration, Dkt. 86-5, ¶ 17 ("Fig. 7 of the '738 patent depicts the Speedboard 2/Curve."); *id.* ¶ 23 ("The TrueForm Runner belt uses slats as shown in the Figs. 7A-7E (Not Fig. 7).").)  To the extent these statements attempt to change the scope of the '738 patent, they are also improper.  *See Voice Techs. Grp., Inc.*, 164 F.3d at 615 (explaining that "the subjective intent of the inventor when he used a particular term is of little or no probative weight in determining the scope of a claim" and that "the inventor [cannot] by later testimony change the invention and the claims from their meaning at the time the patent was drafted and granted.").

Accordingly, in ruling on Defendants' summary judgment motion, the Court will not consider the portions of the Astilean Declaration that state an expert opinion or seek to *post hoc* alter the scope of the patents at issue.  The Court does not list those specific portions, because "[a]t the summary judgment stage, the Court is perfectly capable of excluding these statements from its consideration," *see 523 IP LLC*, 48 F. Supp. 3d at 636 n.33, and, as discussed below, the Court

finds summary judgment against Plaintiffs appropriate, even taking into consideration the Astilean

Declaration, *see Fraser v. Fiduciary Tr. Co. Int'l*, No. 04-CV-6958 (PAC), 2009 WL 2601389, at

*1 n.2 (S.D.N.Y. Aug. 25, 2009) ("The Court need not strike or otherwise disregard the

declarations submitted by Plaintiff and his counsel in order to reach this conclusion."), *aff'd*, 396

F. App'x 734 (2d Cir. 2010).[7]

## II.    Collateral Estoppel

"Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating

in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior

proceeding." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002) (citations

omitted). "In the field of collateral estoppel, the Federal Circuit has explained that the 'application

of [*Blonder-Tongue Laboratories., Inc. v. University of Illinois Foundation*, 402 U.S. 313 (1971),]

is an issue of patent law and is therefore subject to Federal Circuit law.'" *Medinol Ltd. v. Guidant

Corp.*, 341 F. Supp. 2d 301, 313 (S.D.N.Y. 2004) (alterations and footnotes omitted). "When

reviewing the application of collateral estoppel, [courts] are 'generally guided by regional circuit

precedent, [in this case, the Second Circuit,] but [courts] apply [Federal Circuit] precedent to those

aspects of such a determination that involve substantive issues of patent law.'" *Arunachalam v.

Presidio Bank*, 801 F. App'x 750, 752 (Fed. Cir. 2020) (per curiam) (quoting *Ohio Willow Wood

Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed Cir. 2013)).

"[F]ederal courts 'apply federal law in determining the preclusive effect of a federal

---

[7] Because the Court is considering the Astilean Declaration to the extent permissible under
the relevant case law, the Court does not specifically address Plaintiffs' objections to the motion
to strike, including (1) that the declaration "is not traditional expert testimony" and is "lay
testimony that overlaps technical testimony that an expert would present analyzing the same
evidence" (Pls.' Opp. to Mot. to Strike, Dkt. 92, at 5–6); and (2) that the declaration is not sole
evidence upon which Plaintiffs rely (*id.* at 10–12).

judgment.'" *Stinnett v. Delta Air Lines, Inc.*, 803 F. App'x 505, 508 (2d Cir. 2020) (summary

order) (quoting *Marvel Characters, Inc.*, 310 F.3d at 286).

> Under federal law, collateral estoppel applies when "(1) the identical issue was
> raised in a previous proceeding; (2) the issue was actually litigated and decided in
> the previous proceeding; (3) the party had a full and fair opportunity to litigate the
> issue; and (4) the resolution of the issue was necessary to support a valid and final
> judgment on the merits."

*Purdy v. Zeldes*, 337 F.3d 253, 258 (2d. Cir. 2003) (quoting *Interoceanica Corp. v. Sound Pilots,*

*Inc.*, 107 F.3d 86, 91 (2d Cir. 1997)).   "The party asserting collateral estoppel bears the burden of

demonstrating that it is entitled to this relief."  *PPC Broadband, Inc. v. Corning Gilbert Inc.*, 995

F. Supp. 2d 104, 106 (N.D.N.Y. 2014) (quoting *Bear, Stearns & Co. v. 1109580 Ontario, Inc.*, 409

F.3d 87, 93 (2d Cir. 2005)).

"As to the first element, the Federal Circuit has counseled that collateral estoppel may still

be available if the issue of invalidity common to each action is substantially identical."  *In re*

*OxyContin Antitrust Litig.*, 994 F. Supp. 2d 367, 412 (S.D.N.Y. 2014) (internal quotation marks,

ellipsis, and citation omitted), *aff'd sub nom. Purdue Pharma L.P. v. Epic Pharma, LLC*, 811 F.3d

1345 (Fed. Cir. 2016); *Ohio Willow Wood Co.*, 735 F.3d at 1342 ("Our precedent does not limit

collateral estoppel to patent claims that are identical.  Rather, it is the identity of the *issues* that

were litigated that determines whether collateral estoppel should apply." (citations omitted)

(emphasis in original)).   "Collateral estoppel may bar litigation in cases with different but related

patents when there are common issues."  *ArcelorMittal Atlantique et Lorraine v. AK Steel Corp.*,

908 F.3d 1267, 1274 (Fed. Cir. 2018) (citing *Amgen, Inc. v. Genetics Inst., Inc.*, 98 F.3d 1328,

1332 (Fed. Cir. 1996)).

> [B]ecause claims in patents are routinely repeated and duplicated, varying one from
> the other only in certain minor details, it is unsurprising that each of these
> differently worded claims may present identical issues.  The realities of patent
> practice suggest that, merely because the invention, the patentee's contribution to
> the art, is presented in varying language or varying combinations of elements does

> not necessarily mean that the issues bearing on the nonobviousness of that concept
> or contribution vary from one claim to the next.

*Medinol Ltd.*, 341 F. Supp. 2d at 314 (internal quotation marks and footnotes omitted).  "If the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies."  *Ohio Willow Wood Co.*, 735 F.3d at 1342 (citation omitted); *see also Purdue Pharma L.P. v. Ranbaxy Inc.*, No. 10-CV-3734 (SHS), 2012 WL 3854640, at *3 (S.D.N.Y. Sept. 5, 2012) ("The Federal Circuit 'has applied interference estoppel to bar the assertion of claims for inventions that are *patentably indistinct* from those in an interference that the applicant had lost.'" (citing *In re Deckler*, 977 F.2d 1449, 1452 (Fed. Cir. 1992)) (emphasis added).

### A.    The '738 Patent Is Substantially Similar to the '016 Patent

The parties do not dispute the last three elements of collateral estoppel and only disagree with respect to the identity of issues.[8]

"To assess the identity of the issues, it is convenient to compare the adjudicated and unadjudicated claims."  *Abbvie Inc. v. Kennedy Tr. for Rheumatology Res.*, No. 13-CV-1358 (PAC), 2014 WL 3360722, at *3 (S.D.N.Y. July 9, 2014) (alteration and citation omitted), *aff'd sub nom. Abbvie Inc. v. Kennedy Tr. Rheumatology Res.*, 599 F. App'x 956 (Fed. Cir. 2015).  The

---

[8] Even though Plaintiffs argue that they "never had a chance to litigate whether the claims of the '738 patent read on the Speedboard 2/Curve, [and] still less [whether] the '265 provisional application provides sufficient § 112(a) support for the '738 patent" (Pls.' Resp., Dkt. 84, at 21), the Court construes Plaintiffs' argument as disputing the identity of issues, not whether Plaintiffs had a full and fair opportunity to litigate the issue (*see id.* at 26 ("What [Defendants] mean was that Plaintiffs have had a full and fair opportunity to litigate invalidity of the '016 claims,[] NOT the '738 patent claims, which were never before Judge Matsumoto")).  *Cf. Temich v. Cossette*, No. 11-CV-958 (DJS), 2015 WL 3674469, at *3 (D. Conn. June 12, 2015) (analyzing whether plaintiff had a full and fair opportunity to litigate under federal law in the context of "unfairness or inadequacy in the prior litigation").

'738 Patent has only one independent claim,[9] claim 1, which is substantially repeated and duplicated in the '016 Patent, varying only in minor details.

The below chart compares the six elements of Claim 1 of the '738 Patent to the elements of Claim 1 of the '016 Patent (with one exception, as noted):

| Claim 1 of '738 Patent | Claim 1 of '016 Patent |
|---|---|
| (1) "A motor-less, leg-powered curved treadmill comprising: a treadmill frame having peripheral left and right sides;" | "A motor-less, leg-powered curved treadmill comprising: a treadmill frame;" |
| (2) "a concave row of upper support peripheral ball bearings located at each of the peripheral left and right sides of the treadmill frame;" | "a concave row of upper support peripheral ball bearings located at each peripheral side of said upper portion of said motor-less, leg-powered curved treadmill;" |
| (3) "a set of respective front and rear pulley end rollers for rotation;" and (4) "a closed loop treadmill belt, wherein said front and rear pulley end rollers support said closed loop treadmill belt;" | "a set of respective front and rear pulley end rollers for rotation, said front and rear pulleys supporting a closed loop treadmill belt;" |
| (5) "said closed loop treadmill belt comprises a plurality of parallel transverse slats oriented perpendicular to an axis of rotation of said belt and attached to each other in a resilient fashion;" | "said closed loop treadmill belt comprising a plurality of parallel slats oriented perpendicular to an axis of rotation of said belt, said parallel slats attached to each other in a resilient fashion;" |
| (6) "each said transverse slat includes a plurality of fins connected to and extending outward from each said transverse slat and formed with a material with sufficient resiliency, strength and weight to lie on and conform to the respective concave rows of the upper support peripheral ball bearings." | "each said slat includes a plurality of fins descending downward from each said transverse slat" (Claim 7 of the '016 Patent); and "each said slat is made of a material with sufficient resiliency and strength and weight to lie on and conform to a concave row of upper support peripheral ball bearings[.]" |

---

[9] "When a dependent claim and the independent claim it incorporates are not separately argued, precedent guides that absent some effort at distinction, the claims rise or fall together." *Soverain Software LLC v. Newegg Inc.*, 728 F.3d 1332, 1335 (Fed. Cir. 2013) (citations omitted). Plaintiffs do not argue the validity of the dependent claims separately. In fact, all of the '738 Patent's dependent claims are repeated in the '016 Patent. (*Compare* Exhibit A, Dkt. 83-1, at ECF 16–17, *with* Exhibit C, Dkt. 83-3, at ECF 13–14.) Therefore, the Court only examines the independent claim, and the validity of the dependent claims rises and falls with that of the independent claim.

(Exhibit A, Dkt. 83-1, at ECF 16; Exhibit C, Dkt. 83-3, at ECF 13.)[10]  "[T]he mere use of different words in these portions of the claims does not create a new issue of invalidity." *Ohio Willow Wood Co.*, 735 F.3d at 1343; *Control v. Digital Playground, Inc.*, No. 12-CV-6781 (RJS), 2016 WL 5793745, at *5 (S.D.N.Y. Sept. 30, 2016) ("[T]he fact that the Patents may use 'slightly different language to describe substantially the same invention' does not defeat the application of collateral estoppel." (quoting *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1319 (Fed. Cir. 2013))).

In arguing that the '738 and '016 Patents are patentably distinct, Plaintiffs largely rely on the differences between Woodway's product, the Speedboard, and Defendant Samsara's accused product, the TrueFrom.  The logic presumably is that the Speedboard embodies the '016 Patent, whereas the TrueForm embodies the '738 Patent, and the differences between the Speedboard and the TrueForm illustrate the differences between the '016 Patent and the '738 Patent.  (*See* Pls.' Resp., Dkt. 84, at 14 ("Plaintiffs dispute that claim 1 of the '738 patent is 'essentially identical' to claim 1 of the '016  patent[,] . . . [because] [t]he claims of the '738 patent were designed to cover the TrueForm Runner (the '738 patent) and the claims of the '619 patent and the '016 patent were designed to cover the Speedboard 2/Curve (the '016 patent).").)  However, this comparison is misleading and irrelevant.  "It is well settled that claims may not be construed by reference to the accused device." *NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002) (citing *SRI Intern v. Matsushita Elec. Cor. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (en

---

[10] Limiting their comparison of the '738 and '016 Patents to claim 1 of each patent, Plaintiffs argue that certain elements of claim 1 of the '738 Patent are not present in claim 1 of the '016 Patent.  (*See, e.g.*, Pls.' Resp., Dkt. 84, at 23–24.)  This is misleading.  As indicated in the above chart, the sixth element of claim 1 of the ' 738 Patent is partially listed in two claims of the '016 Patent.  In *Woodway*, Judge Matsumoto invalidated every claim of the '016 Patent, and there is no reason for claim 1 of the '738 Patent to avoid invalidation simply because one of its claim limitations was partially listed (and invalidated) as a separate claim in the '016 Patent.

banc)); *see also Verizon Servs. Corp.*, 602 F.3d at 1340 ("[T]he inventor [cannot] by later testimony change the invention and the claims from their meaning at the time the patent was drafted and granted." (quoting *Voice Techs. Grp., Inc.*, 602 F.3d at 615–17)).  Even when an accused product infringes a patent claim, it could very well contain features not included in, or contradicting, the patent claim.  Indeed, Plaintiffs' own argument illustrates this point.  In trying to distinguish the Speedboard from the '738 Patent, Plaintiffs use the example that "[d]ependent claim 6 [of the '738 Patent] limits the slats of claim 1 to rubber[,] plastic or wood, where[as] the Woodway Curve belt is formed with slats made of aluminum."  (Pls.' Resp., Dkt. 84, at 13 (citation omitted).)  However, claim 9 of the '016 Patent is identical to claim 6 of the '738 Patent and requires slats to be made of "a material selected from the group consisting of rubber, plastic and wood."  (Exhibit C, Dkt. 83-3, at ECF 14.)  Any differences between the Speedboard and the TrueForm that do not result from a difference between the '016 Patent and '738 Patent are not pertinent to the analysis.  Therefore, the Court considers Plaintiffs' arguments only to the extent that they are relevant to the existence of any difference between the *patents* at issue, the '016 Patent and the '738 Patent.[11]

Plaintiffs next argue that figures 7A–7E depict the slats in the Trueform as each having three fins attached, while such specification is absent in the '016 Patent.  (Pls.' Resp., Dkt. 84, at 12–13.)  However, the '016 Patent, while not specifying slats having three fins attached, does state that "a plurality of fins" are connected to each slat and that each slat "includes at least one fin."  (Exhibit C, Dkt. 83-3, at ECF 14.)  Contrary to Plaintiffs' suggestion, nothing in the '016 Patent

---

[11] For instance, Plaintiffs emphasize the fact that "[t]he TrueForm Runner belt as shown does not have the teeth needed by the Speedboard 2/Curve."  (Pls.' Resp., Dkt. 84, at 12.)  Neither the '016 Patent or the '738 Patent contains any reference to the belt having or not having teeth or other similar features.  This difference therefore has no bearing on the question of whether the '016 Patent and the '738 Patent are patentably distinct.

suggests that each slat was intended to have only one fin. Plaintiffs' only support for this suggestion is the fact that the slats in the Speedboard only have one fin (Pls.' Resp., Dkt. 84, at 12), which, as previously discussed, is irrelevant to the construction of the '016 Patent. *See NeoMagic Corp.*, 287 F.3d at 1074 (reiterating well-settled principle that "claims may not be construed by reference to the accused device"). Plaintiffs also argue that each slat having "more than one fin" is not equivalent to each slat having "a plurality of fins." (*Id.*) However, Plaintiffs fail to explain how those specifications are different or why any purported difference is patentably significant. *Cf. Orenshteyn*, 979 F. Supp. 2d at 455–56 (finding that prior art with "more than one client station" anticipated patent claim for "a plurality of client stations"). Therefore, Plaintiffs fail to show that the alleged difference "change[s] [the] invalidity analysis." *See Soverain Software LLC*, 778 F.3d at 1319; *see also id.* ("The additional limitation here—transmitting a hypertext statement over the Internet, rather than over a generic network—does not materially alter the question of the validity of claim 39."); *Ohio Willow Wood Co.*, 735 F.3d at 1343 (finding that plaintiff failed to show the difference between a polymeric gel in the adjudicated claim and a block copolymer gel in the unadjudicated claim to be patentably significant).

Plaintiffs further argue that the '738 Patent does not contain "a means for slackening" as required in claim 1 of the '016 Patent. (Pls.' Resp., Dkt. 84, at 2–3 ("Woodway's belt is heavier than the belt implemented in the TrueForm Runner because . . . [the Speedboard's] slats hav[e] a single fin made of aluminum (not fiberglass), [and thus] the Speedboard 2/Curve required a means for slackening and related structure to operate therewith to accommodate the extra heavy slats. The TrueForm Runner's much lighter belt[] and slats made of fiberglass . . . obviated any need for a means for slackening.").) However, the absence of a claim limitation only "cause[s] the claim to be broader, and thus even more susceptible to disclosure by the prior art." *Orenshteyn*, 979 F.

Supp. 2d at 454. Therefore, the lack of "a means for slackening" (Pls.' Resp., Dkt. 84, at 3) does not make claim 1 of the '738 Patent distinct from the broader claims of the '016 Patent. *Orenshteyn*, 979 F. Supp. 2d at 454 (applying collateral estoppel and finding that the unadjudicated patent claim was not distinct from the invalidated patent claim, where the only substantive changes in the unadjudicated claim were "to delete various requirements" present in the adjudicated claim).

Accordingly, the Court finds that the '738 Patent is not materially different from the '016 Patent and thus collateral estoppel applies with respect to rulings regarding the validity of the '016 Patent. *See In re Arunachalam*, 709 F. App'x 699, 703 (Fed. Cir. 2017) (per curiam) ("[A]ny differences between the two sets of claims are not material such that those differences would affect the patentability of the challenged . . . [p]atent.").

### B.    The '738 Patent Is Invalid

Because the limitations in claim 1 of the '738 Patent are all present in the invalidated '016 Patent, the issues of invalidity decided in *Woodway* cannot be disputed here.[12] Plaintiffs, however, argue that the question of the '738 Patent raises different issues from those already decided in *Woodway*. (Pls.' Resp., Dkt. 84, at 20–27.) The Court disagrees.

First, to the extent that Plaintiffs rely on the differences between the Speedboard and TrueForm to argue that the '738 Patent presents different issues than the '016 Patent, because the Court has found that the '738 Patent is not materially different from the '016 Patent, the Speedboard, which anticipates the '016 Patent, necessarily anticipates the '738 Patent as well. For instance, Plaintiffs argue that "[d]ependent claim 6 [of the '738 Patent] limits the slats of claim 1

---

[12] "[T]he Federal Circuit has established that issue preclusion applies even though the precluding judgment comes into existence after the initiation of the case as to which preclusion is sought." *NetSoc, LLC v. Chegg Inc.*, No. 18-CV-10262 (RA), 2020 WL 174305, at *1 (S.D.N.Y. Jan. 13, 2020) (internal quotation marks, ellipsis, and citation omitted).

to rubber[,] plastic or wood, where[as] the Woodway Curve belt is formed with slats made of aluminum." (Pls.' Resp., Dkt. 84, at 13.) However, as explained above, claim 9 of the '016 Patent is identical to claim 6 of the '738 Patent. (*See* Exhibit C, Dkt. 83-3, at ECF 14.) Plaintiffs also argue that the Speedboard's "roller bearings [] and roller guides" do not anticipate claim 9 of the '738 Patent (Pls.' Resp., Dkt. 84, at 13–14), when in fact claim 9 of the '738 Patent varies from claim 8 of the '016 Patent only in minor details. Thus, the Court "could not accept Plaintiff[s'] position [that the Speedboard does not anticipate the '738 Patent] without necessarily rejecting the decision of the [*Woodway*] court," *Orenshteyn*, 979 F. Supp. 2d at 454, in which the same issues presented here were fully litigated by Plaintiffs and the defendants there.

Second, Plaintiffs argue that the '738 Patent, unlike the '016 Patent, is entitled to enjoy the priority date of the '265 Application, because Judge Matsumoto in *Woodway* determined only that the '265 Application did not provide priority support under 35 U.S.C. § 112(a) for the '016 Patent, since the '265 Application did not disclose a means for slackening. (Pls.' Resp., Dkt. 84, at 20–21.) A non-provisional patent application can claim priority to a provisional application filing date, if "the specification of the *provisional* . . . 'contain[s] a written description of the invention and the manner and process of making and using it, in such full, clear, concise, and exact terms,' to enable an ordinarily skilled artisan to practice the invention *claimed* in the *non-provisional* application."[13] *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015) (emphasis in original) (quoting *New Railhead Mfg., LLC v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1294 (Fed. Cir. 2002)). Judge Matsumoto found that the '265 Application did not satisfy

---

[13] The '738 Patent was filed before March 16, 2013 (*see* Exhibit A, Dkt. 83-1, at ECF 2), and therefore the version of section 112 that preceded the Leahy-Smith America Invents Act governs. *See Fleming v. Escort Inc.*, 774 F.3d 1371, 1374 n.1 (Fed. Cir. 2014).

the written description requirement to provide priority support for the '016 Patent because it did not contain certain claim limitations present in the '016 Patent.  *Woodway*, 432 F. Supp. 3d at 205–06.  However, Plaintiffs' focus on the means for slackening as the only relevant claim limitation mischaracterizes Judge Matsumoto's reasoning.  In addition to the means for slackening, Judge Matsumoto also found that the '265 Application "did not disclose upper support peripheral ball bearings," a feature present in both the '016 Patent and the '738 Patent.  *Id.* at 206 (citation omitted).  Judge Matsumoto further noted that the '265 Application did not disclose "slats attached to each other in a resilient fashion," which is again present in both the '016 and '738 Patents.  *Id.* at 206 n.18 (citation omitted).  Because Judge Matsumoto has found that these limitations, which are present in the '738 Patent, were not disclosed in the '265 Application, the '265 Application does not satisfy the written description requirement to provide an earlier priority date for the '738 Patent either.

Accordingly, because any difference between the '738 Patent and the '016 Patent does not materially alter the question of validity and because the invalidity of the '738 Patent does not present any new issues other than those decided in *Woodway*, the Court finds that the '738 Patent is not entitled to an earlier priority date and is invalid under the on-sale bar.  Because the Court finds that based on collateral estoppel the '738 Patent is invalid, the Court does not independently examine its validity when compared with the Speedboard or the Speedboard Owner's Manual published by Woodway in 2009.[14]

### C.      Plaintiffs' Other Contentions Are Unavailing

Plaintiffs also assert a number of arguments in opposition to Defendants' motion for

---

[14] In addition to the Speedboard, Defendants argue that the Speedboard Owner's Manual also anticipated the '738 Patent.  (*See* Defendants' Brief, Dkt. 81, at 20–24.)

summary judgment, all of which are unpersuasive.

Plaintiffs repeatedly assert that because the '738 Patent enjoys the presumption of validity, Defendants have not carried their burden of proving by clear and convincing evidence that the '738 Patent is invalid. (Pls.' Resp., Dkt. 84, at 4–5, 18–19.) However, the question before this Court is not whether Defendants have overcome the presumption of validity, but whether the *Woodway* decision has collateral estoppel effect on the validity of the '738 Patent. Defendants here have carried their burden of showing that the issues pertinent to the validity of the '738 Patent are identical to those actually decided in *Woodway*. Judge Matsumoto indeed found that there was clear and convincing evidence that the '016 Patent was invalid under 35 U.S.C. § 102. *Woodway*, 432 F. Supp. 3d at 203. Therefore, summary judgment is appropriate despite the presumption of validity usually accorded to patents.

Plaintiffs also argue that, because the PTO Examiner issued the '738 Patent with knowledge of the Speedboard and the '016 Patent, the Court should not invalidate the '738 Patent, given the evidence that the PTO Examiner possessed at the time. (Pls.' Resp., Dkt. 84, at 17, 19.) This argument too is unavailing.

First, although the '738 Patent claimed a priority date of November 2, 2009 based on the filing date of the '265 Application (Exhibit A, Dkt. 83-1, at ECF 2), the PTO Examiner "does not examine provisional applications as a matter of course" when determining priority dates, *Woodway*, 432 F. Supp. 3d at 208 (citing *Dynamic Drinkware, LLC*, 800 F.3d at 1380), and would have simply accepted the claimed priority date for purposes of the PTO review. *See also Chizmar v. ACCO Brands Corp.*, No. 14-CV-2181 (PKC), 2015 WL 2408818, at *6 (S.D.N.Y. May 8, 2015) ("Patent examiners are not expected to make determinations about the written description requirement unless the filing date of the earlier nonprovisional application is actually needed

during the examination process." (internal quotation marks, alteration, and citation omitted)), *aff'd*, 636 F. App'x 803 (Fed. Cir. 2016). Having accepted the November 2, 2009 priority date for the '738 Patent, the Examiner would not have found that the Speedboard constituted invalidating art because it had not been "on sale" more than one year before November 2, 2009. *See Woodway*, 432 F. Supp. 3d at 202 n.10 ("The applicable version of section 102(b) bars entitlement to a patent where: [T]he invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States . . . ." (quoting 35 U.S.C. § 102(b) (ellipsis in original)). Thus, nothing can be inferred from the Examiner's decision to issue the '738 Patent notwithstanding the existence of the Speedboard, nor does the issuance of the '738 Patent conflict with the Court's finding that the '738 Patent is not entitled to the November 2, 2009 priority date.

Second, Plaintiffs argue that, during prosecution, the PTO Examiner "indicated that claims 1–9 were allowable because claims 11–13, which read on the Speedboard 2/Curve, were cancelled[,]" thus implying that the Examiner determined that claims 1–9 were not anticipated by the Speedboard. (Pls.' Resp., Dkt. 84, at 16 (citation omitted).) However, this summary is misleading. The Examiner was in fact discussing a separate patent application that was filed by Woodway, not the Speedboard. (Exhibit 6, Dkt. 86-6, at ECF 7.) Therefore, "[Plaintiffs] cannot demonstrate, without engaging in unacceptable speculation, that the examiner even treated [the Speedboard] as relevant prior art." *See In re Omeprazole Patent Litig.*, 258 F. Supp. 2d 221, 228 n.6 (S.D.N.Y. 2001). Indeed, "little, if any, conclusion can be drawn from the examiner's consideration of the" Speedboard and the '016 Patent. *See id.*

Lastly, the PTO Examiner did consider the '016 Patent to be invalidating of the '738 Patent on the basis of nonstatutory obvious-type double patenting. The Examiner found that, while the

24

'016 Patent and the '738 Patent "are not identical, they are not patentably distinct from each other because it is clear that all the elements of the ['738 Patent] claims are found in the claims of the ['016 Patent]." (Exhibit I, Dkt. 83-9, at ECF 6.)  This finding prompted Plaintiff Astilean to submit a terminal disclaimer (Exhibit J, Dkt. 83-10, at ECF 9), "which limits the term of the later patent (and the protection afforded thereto) to the same period as the earlier one, thereby guaranteeing that the second patent would expire at the same time as the first," *Orenshteyn*, 979 F. Supp. 2d at 452 (citations omitted).  While a "terminal disclaimer cannot be treated as an admission" of double patenting, *id.* at 454 (citation omitted), it "is still very relevant to [the] inquiry" of preclusion, *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1168 (Fed. Cir. 2018).

> By filing a terminal disclaimer, a patent applicant waives potentially valuable rights.  [The Federal Circuit] do[es] not lightly presume that patent applicants forfeit the right to alienate their patents, and in certain cases years of exclusivity, as a mere procedural expedient. . . .  [A] terminal disclaimer is a strong clue that a patent examiner and, by concession, the applicant, thought the claims in the continuation lacked a patentable distinction over the parent.

*Id.*  Therefore, contrary to Plaintiffs' assertion, the Examiner's findings actually undercut Plaintiffs' position regarding the '738 Patent not being anticipated by the '016 Patent.

\*      \*      \*

Accordingly, the Court finds that collateral estoppel applies and that the '738 Patent is not entitled to the earlier priority date and is invalid under the on-sale bar.  Plaintiffs' patent infringement claim is dismissed.

## CONCLUSION

For the reasons stated above, the Court denies Defendants' motion to strike, but grants their motion for summary judgment.  Because the Court has previously determined that Plaintiffs will be permitted to recover only nominal damages in an amount no greater than $1.00 for their breach

of contract claim, which is the only claim remaining, the parties shall inform the Court within thirty (30) days of this Order how they would like proceed in this case.

SO ORDERED.

*/s/ Pamela K. Chen*

Pamela K. Chen
United States District Judge

Dated: September 21, 2020
Brooklyn, New York